LUCE & CO., S. EN C., consignante, *v.* EUFROSINA CIANCHINI VIUDA DE SANTIAGO, apelada, ROSENDA SANTIAGO RIVERA, ET AL., apelantes.

Número 10684.
*Sometido:* 5 de febrero de 1953. *Resuelto:* 8 de marzo de 1954.

*Córdova & González, Eladio Rodríguez Otero, J. Paniagua Se-rracante,* abogados de los apelantes; *José A. Poventud,* abogado de la apelada; *Fernando Beiró Rovira,* abogado de la consignante.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

Éste es un recurso de apelación interpuesto contra una sentencia dictada por la Sección de Ponce del anterior Tribunal de Distrito en un procedimiento sobre consignación, decretando que corresponden a Eufrosina Cianchini viuda de Santiago los cánones de arrendamiento que fueron consignados en corte por Luce & Co., S. en C., arrendataria de una finca rústica denominada Cayure sita en el barrio Jauca del término municipal de Santa Isabel, P. R.

La mencionada finca Cayure, pertenecía a Florencio Santiago, quien era casado con Eufrosina Cianchini. Falleció Florencio el 6 de septiembre de 1924 bajo testamento abierto, y por disposición en el mismo correspondió el usufructo de la finca Cayure a Clotilde Santiago Rivera, hermano de Florencio, reservándose la nuda propiedad al mismo Clotilde y a sus hermanas Teresa, Dolores, Rosenda, María y Josefa Santiago Rivera.

El 8 de diciembre de 1939 Clotilde arrendó la referida finca a Luce & Co., S. en C., por un término de 10 años a partir del 1º. de julio de 1941 y vencedero en junio de 1951 y por un canon anual de $4,500, pagadero por anualidades adelantadas.

El 9 de enero de 1949 falleció Clotilde. Al así extinguirse su usufructo[1] surgió una controversia entre Eufrosina Cianchini, viuda de Florencio Santiago y los herederos de éste, respecto a quién correspondía percibir los cánones de arrendamiento de la finca Cayure, si a la viuda o a los herederos voluntarios de Florencio. Ínterin todas las partes in-

---

[1] El artículo 441, inciso 1, del Código Civil (Ed. 1930), dispone que "El usufructo se extingue: 1. Por muerte del usufructuario. . . . ."

teresadas accedieron a que se extendiera el contrato de arrendamiento hasta la fecha que originalmente se había pactado entre Luce & Co. y Clotilde, o sea, junio de 1951.

Ante esas reclamaciones opuestas, Luce & Co., S. en C., procedió a consignar en corte los cánones correspondientes al año que comenzó el 1ro. de julio de 1949 y posteriormente consignó los cánones correspondientes a los años que comenzaron el 1ro. de julio de 1950 y 1ro. de julio de 1951.(²)

Comparecieron las partes radicando reclamaciones opuestas alegando cada una tener derecho a los cánones depositados.

La viuda de Santiago sostiene que ella es la única persona con derecho a dicho fondo y apoya su reclamación en ciertas disposiciones legales, en las cláusulas 13, 19, 21 y 22 del testamento otorgado en 1923 por su esposo Florencio Santiago y en las cláusulas 1, 5, 8 y 12 de la escritura particional de los bienes relictos a su fallecimiento otorgada en 20 de abril de 1925. Alegó además la viuda que los herederos voluntarios están impedidos de reclamar los cánones de arrendamiento por haber ellos aceptado el contrato particional donde se reconoce la eficacia del derecho de la compareciente para disfrutar del usufructo sobre la finca Cayure a la muerte de Clotilde; que la reclamación expuesta por los herederos voluntarios no fué incoada dentro de los cuatro años de haberse consumado el contrato particional; que la impugnación que éstos hacen al derecho o interés usufructuario dè Eufrosina Cianchini no surgió dentro de los 15 años anteriores a la radicación de su demanda, habiendo transcurrido más de 24 años desde la muerte del testador, fecha desde la cual, alega Eufrosina, adquirió ella su derecho o interés usufructuario sobre la finca Cayure.

En contestación a la reclamación de Eufrosina los herederos voluntarios de Florencio alegan que en la escritura parti-

---

(²) Al vencer el contrato de arrendamiento en 1951 todos los interesados accedieron a renovar el mismo hasta el 30 de junio de 1956, bajo las mismas cláusulas y convenios, excepto el canon anual que se aumentó a $6,000.

·cional no se aceptó ni se reconoció derecho alguno de usufructo a favor ·de la cónyuge supérstite, ni se interpretó el testamento en la forma que sostiene la. reclamante. Negaron los herederos voluntarios que a la muerte de Clotilde estuviera Eufrosina disfrutando del usufructo que se constituyera en el testamento de su esposo, y alegaron además que Eufrosina rechazó el usufructo sobre todos los bienes inmuebles del causante que se le ofreció en el testamento y eligió el usufructo viudal a que tenía derecho por ley.

El caso quedó sometido al tribunal a quo mediante una estipulación sobre los hechos suscrita por todas las partes, luego de lo cual se dictó la sentencia que motiva este recurso.

Se imputa ahora al tribunal sentenciador la comisión del siguiente único error:

"Erró la corte inferior al interpretar el testamento y la escritura de partición de bienes en el sentido de que el usufructo de la finca Cayure correspondía a la demandada (sic) Eufrosina Cianchini al morir don Clotilde Santiago, y al no resolver que la plena propiedad de dicha finca correspondía a los herederos apelantes de don Florencio Santiago al morir don Clotilde Santiago."

█ Habiéndose sometido el caso, como dijimos antes, por una estipulación de hechos, estamos en la misma posición que el tribunal a quo al examinar las cuestiones aquí envueltas.

██ Examinemos en primer término, las disposiciones del testamento y de la escritura de partición de bienes que están en controversia.

El testamento en su cláusula 19 dice:

"Declara: que también lega a su repetida esposa Doña Eufrosina Cianchini todas las prendas, muebles, enseres y artefactos existentes a su muerte, tanto en su casa de Aibonito, como en la de ésta, todos sus automóviles, caballos de silla y coche, incluyendo los coches, veinte vacas de leche y un toro padre por ella escogidas. - - - - - - "Por prenda se entiende todas las alhajas de su uso personal de ambos esposos, sin distinción alguna. *Si su mencionada esposa renunciase al usufructo vidual a que tiene derecho por la ley y que es más pequeño, la designa*

*como heredera usufructuaria por durante toda su vida si se con-*
*servarse viuda o hasta que contraiga segundas nupcias de todos*
*aquellos bienes inmuebles existentes* en terrenos, casas o edificios
sobre los cuales *no hubiere* hecho alguna disposición en este tes-
tamento, pudiendo y debiendo percibir todos sus productos, ren-
tas, utilidades y ventajas, sin limitación, ni restricción alguna
pudiendo efectuar en su forma las variaciones que estime con-
venientes, y cualesquiera de dichos bienes que se consumiere o
destruyere por el uso o por cualquier siniestro los herederos de
la nuda propiedad no le podrán hacer reclamación alguna, y en el
dudoso caso que se la hicieren la parte que afecte la reclamación
se considerará como legada a su predicha esposa: ordena que
quede relevada y perdonada de formar inventarios, tasaciones o
descripciones de bienes y de prestar cualesquiera fianza, prohi-
biendo en absoluto que se le moleste, ni pida cuenta por cosa
alguna, aunque aquí no haya sido prevista." (Bastardillas
nuestras.)

La cláusula 21 del mismo testamento lee como sigue:

"Declara: que si a la muerte de su hermano Don Clotilde
Santiago su actual esposa estuviere *todavía disfrutando del usu-
fructo que aquí se le concede,* los bienes de su propiedad que le
ha dado a aquél en usufructo por la cláusula décimo-tercera(³)
pasarán a su dicha esposa para que los siga usufructuando en
las mismas condiciones que le ha dado los demás bienes inmue-
bles." (Bastardillas nuestras.)

La sección undécima del hecho Primero de la escritura de
partición de bienes otorgada el 20 de abril de 1925 lee así:

"Décima-primera: que si a la muerte de don Clotilde San-
tiago, estuviere su esposa disfrutando de su usufructo, los bienes
que deja a dicho hermano en usufructo pasarán a su esposa en
iguales condiciones."

En la misma escritura particional, a la pág. 156, se adjudica
a Clotilde el usufructo de la finca Cayure y se hace constar
que en cuanto a "[e]sta finca y la anteriormente mencionada
el fenecido hizo también la siguiente disposición:

---

(³) Entre los bienes dados en usufructo a Clotilde por esta cláusula del
testamento se encuentra la finca Cayure.

'21.—Declara: que si a la muerte de su hermano don Clotilde Santiago, su actual esposa estuviere todavía disfrutando del usufructo que aquí se le concede, los bienes de su propiedad que le ha dado a aquél en usufructo, por la cláusula décima-tercera pasarán a su dicha esposa para que los siga usufructuando en las mismas condiciones que le ha dado los demás bienes inmuebles.' "

La única cuestión que se plantea, en verdad, es la de determinar cuál fué la intención de Florencio Santiago Rivera al redactar las cláusulas 19 y 21 de su testamento. Como cuestión complementaria, hay que determinar el efecto que sobre esa intención y disposiciones haya podido tener la sección undécima del hecho primero de la escritura de partición de bienes antes copiada. Finalmente discutiremos las defensas especiales levantadas en el tribunal inferior y reiteradas en esta apelación por la viuda del testador, la primera, en cuanto a la prohibición impuesta por el testador de impugnar el testamento y la segunda, en cuanto a la prescripción de la acción.

En casos como el presente en los cuales está envuelto el determinar cuál fué la intención del testador, es regla de hermenéutica la de que en caso de duda debe atenderse más a la voluntad del otorgante que al sentido literal de las palabras que usó en el documento. Artículo 624 del Código Civil (Ed. 1930).(4) *Junghanns* v. *Cornell University*, 71 D.P.R. 673, 682. No habiendo conformidad entre los interesados sobre cuál debe ser la interpretación de las disposiciones aquí en controversia, dicha misión corresponde a los tribunales.

---

(4) El artículo 624 del Código Civil (Ed. 1930), lee así:

"Artículo 624.—Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fué otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador según el tenor del mismo testamento.

"El testador no puede prohibir que se impugne el testamento en los casos en que haya nulidad declarada por la ley."

5 Manresa, Comentarios al Código Civil Español, 454. Ahora bien, para que puedan los tribunales ejercer esa facultad de interpretación, es menester que haya en la cláusula testamentaria alguna oscuridad o ambigüedad. 8 Colin y Capitant, Derecho Civil, 12. Y ésa es, precisamente, la situación aquí. La viuda de Santiago sostiene que la intención del testador manifestada en la cláusula 19 del testamento fué permitirle optar por el usufructo que resultare de mayor cuantía y que en la cláusula 21 manifestó su intención de que ella sustituyese en el usufructo de la finca Cayure a su hermano de él Clotilde independientemente de cuál hubiere sido el usufructo por ella escogido siempre que hubiese sido el de mayor cuantía y que ella se hubiese mantenido soltera tal como lo ha hecho. Veamos si le asiste la razón.

Sabemos que el usufructo vidual es la legítima, 14 Scaevola, Código Civil, 712, que la ley separa para el cónyuge viudo, quien es un heredero forzoso.([5]) Artículo 735 en relación con el 736, inciso 3 del Código Civil (Ed. 1930). Sobre esa legítima no puede el testador imponer carga ni condición alguna. Artículo 741; 5 Valverde, Tratado de Derecho Civil Español, 274; 6 Manresa, ob. cit., 418 y 602. Por lo tanto, una disposición del testador al efecto de que el usufructo legal de su cónyuge viudo estaría afecto a una condición resolutoria caso de ésta contraer segundas nupcias, se tendría por no puesta, por ser contraria a la ley según expresada en el citado artículo 741. Artículo 721;([6]) 6 Manresa, ob. cit., 297; 14 Scaevola, ob. cit., 676 y 808. Una dis-

---

([5]) Los comentaristas no están acordes en cuanto a este punto, pero nos decidimos por la doctrina y la jurisprudencia española que afirman el carácter de heredero forzoso del cónyuge viudo. 14 Scaevola, Código Civil, 213 y 678; 6 Manresa, ob. cit., 302. Este carácter lo dan los propios artículos 730 y 736 de nuestro Código Civil. Contra: 8 Colin y Capitant, ob. cit., 327.

([6]) Este artículo dispone lo siguiente:

"Artículo 721.—Las condiciones imposibles y las contrarias a las leyes o a las buenas costumbres se tendrán por no puestas, y en nada perjudicarán al heredero o legatario, aun cuando el testador disponga otra cosa."

posición a ese efecto significaría que el usufructo legal se extinguiría de cumplirse la condición resolutoria. Artículo 441, inciso 2. ([7]) Sin embargo, como dice Manresa, ob. cit., Tomo 6, pág. 609, dicho inciso es inaplicable al usufructo vidual toda vez que "[s]iendo vitalicio el usufructo concedido al viudo, no hay más plazo ni *condición* que la vida del usufructuario . . . ." (Bastardillas nuestras.) "La porción legítima,—dice el mismo comentarista, ob. y tomo citados, pág. 292— se arranca del patrimonio de su dueño, deja de pertenecer a éste: puede gozar mas no puede disponer. Los derechos del testador sobre ella, o sobre el derecho en que la legítima consista, en cuanto al poder de disposición, quedan igualados a los de un extraño; no puede disponer, luego *no puede gravar, limitar ni modificar en modo alguno ese derecho* . . . . . . ." (Bastardillas nuestras.) Al mismo efecto señala Scaevola, ob. citada, Tomo 14, pág. 808, que el usufructo vidual "está . . . . exento de toda condición, porque su carácter lo hace invulnerable a todo gravamen."

 ■ Conociendo esa situación, ([8]) el testador aquí, Florencio Santiago, interesado en inducir a su esposa a que permaneciese en estado de viudez después de la muerte de él, decidió ofrecerle un usufructo, a su juicio, de mayor valor y cuantía que el vidual, condicionado este legado a que renunciase al otro usufructo y a que permaneciese en estado de viudez. Tal disposición o condición es válida. Artículo 722, párrafo 2, Código Civil. Ésa fué, sin dudas, la intención del testador al así redactar la cláusula 19 y en ello estamos de acuerdo con el tribunal inferior.

---

 ([7]) Dicho artículo dispone: "El usufructo se extingue: . . . . . . . . 2. Por expirar el plazo por que se constituyó, o cumplirse la condición resolutoria consignada en el título constitutivo. . . . . . ."

 ([8]) Decimos que el testador conocía esa situación toda vez que se trata de un testamento nuncupativo que fué, sin dudas, redactado por el notario, persona versada en la ley, siguiendo instrucciones del testador. 3 Oyuelos, Digesto, 303.

■ Ahora bien, conforme al artículo 764 del Código Civil(⁹) el derecho en este caso de la viuda de Santiago era a la mitad de la herencia en usufructo. Conforme a ello su usufructo vidual ascendió a $187,116.19 mientras que el usufructo sobre los bienes de que no dispuso el testador sólo ascendía a $145,561.98. La viuda de Santiago optó por aceptar el usufructo legal que como hemos visto resultaba de mayor cuantía, contrario a lo que creía el testador. Podemos aceptar que su rechazo del usufructo voluntario no se debió a la condición impuéstale por el testador. Como cuestión de hecho, Eufrosina se ha mantenido viuda hasta el presente. Sin embargo, no podemos convenir con el tribunal a quo en que "la intención del testador fué que la viuda gozara del usufructo de mayor cuantía siempre y cuando observara las limitaciones por él propuestas" ni en que el hecho de que el usufructo de mayor cuantía resultare ser el vidual, que el testador creía iba a ser el más pequeño, no anulaba la voluntad del testador para aumentar la cuota de la viuda. Entendemos, por el contrario, que la intención del testador fué, como dijimos antes, sujetar a la viuda en un estado de soltería mediante la condición resolutoria señalada. Ella, sin embargo, al aceptar el usufructo vidual no estaba obligada *ni lo está aún* a cumplir la obligación que señaló el testador. Que como cuestión de hechos la haya cumplido *hasta ahora* es cosa que rebasa el ámbito de las cuestiones legales.

■ Ahora bien, alega la apelada que la cláusula 21 del testamento, al hablar del "usufructo que aquí se le concede" significa aquél de los dos que fuese seleccionado por la viuda, cualquiera que fuese. No le asiste la razón tampoco. El testador, por virtud de su testamento, sólo le concedía un usufructo a Eufrosina, a saber, el usufructo de los bienes de los cuales él no había dispuesto. El otro, el usufructo vidual,

---

(⁹) Dicho artículo lee así:

"Artículo 764.—Cuando el testador no dejare descendientes ni ascendientes legítimos, el cónyuge sobreviviente tendrá derecho a la mitad de la herencia, también en usufructo."

no se lo concedía el testador, ni el testamento. El usufructo vidual se lo concede la ley y en este caso específico el artículo 764 ya citado. 14 Muscius Scaevola, Código Civil, 808 (4ª ed.); ([10]) 6 Manresa, ob. cit., 421. Tan es así que el testador no habría podido privar a Eufrosina de dicho usufructo ni imponer condición, carga o gravamen alguno sobre el mismo. Por otro lado, el testador no estaba obligado a concederle usufructo alguno a Eufrosina sobre los bienes de los cuales él no dispuso. Una vez que el testador estableció ese derecho de usufructo sobre dichos bienes, lo que hizo fué concederle a Eufrosina un derecho de usufructo al que ordinariamente ella no tendría derecho. Siendo ello así, no tenemos dudas de que al redactar el lenguaje de la cláusula 21 el testador, que creía que el usufructo voluntario resultaría mayor, estaba seguro que su mujer aceptaría éste. En vista de ello estableció un usufructo sucesivo en cuanto a la finca Cayure a favor de Eufrosina siempre que ella estuviese aún disfrutando del usufructo voluntario.

Ahora bien, el derecho de usufructo de la finca Cayure a favor de Eufrosina estaba sujeto a dos condiciones: 1ra. a una condición suspensiva que dependía de que ella aceptase el usufructo que le concedía el testamento; y 2da. de cumplirse esa condición estaba sujeto a la otra condición resolutoria, antes señalada, de que ella se mantuviese soltera. Sin dudas lo que tenía en mente el testador era que aceptando Eufrosina el usufructo voluntario se mantuviese aún viuda para poder sustituir a Clotilde en el usufructo de Cayure. Y ello es así porque de haber ella aceptado el usufructo voluntario y luego contraído segundas nupcias se habría cumplido la condición resolutoria y habría ella perdido su derecho sobre

---

([10]) Scaevola se expresa así:

".......Al usufructo vidual no puede señalársele plazo alguno, porque, por *ministerio de la ley*, dura la vida del cónyuge supérstite. Y está asimismo exento de toda condición, porque su carácter le hace invulnerable a todo gravamen. El viudo goza del usufructo pura, simple e indeterminadamente por imposición de la ley, no por gracia del testador; así es que mientras viva, le acompaña dicho derecho sin restricción jurídica alguna."

dicho usufructo voluntario. Artículo 441, inciso 2, supra, escolio 5. Esto significa que llegado ese caso, no estaría ella "todavía disfrutando del usufructo que aquí se le concede" o sea, del usufructo voluntario y no tendría derecho, por lo tanto, al usufructo de Cayure.

Hay una razón más para sostener que cuando el testador habló de "todavía disfrutando del usufructo que aquí se le concede" se refería al usufructo voluntario. El artículo 765 del Código Civil autoriza a los herederos "a satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial." En virtud de este artículo, los herederos voluntarios en este caso habrían podido satisfacer el usufructo vidual por uno de los medios señalados en el artículo citado. 14 Scaevola, ob. cit., 813 et seq.; 6 Manresa, ob. cit., 597 et seq. ([11]) De haberlo hecho así, la viuda de Santiago no habría estado disfrutando de su usufructo legal al morir Clotilde, ya que, en el caso provisto por el citado artículo 765, no existen en el cónyuge los derechos y obligaciones del usufructuario. 6 Manresa, ob. cit., 602. ([12]) El testador pudo haber previsto la posibilidad de que esa situación se produjera, pero no hizo disposición alguna en cuanto a ello. No era necesario. Él estaba seguro de que ella aceptaría el usufructo voluntario, lo que haría inaplicable el mencionado artículo 765, y de que sustituiría a Clotilde a su muerte si se había mantenido viuda.

Ahora bien, como quiera que la condición suspensiva no se materializó al aceptar ella el usufructo vidual, su derecho a

---

([11]) Roca Sastre opina que antes de que los herederos den cumplimiento a dicho artículo 765, el concepto de usufructo sólo habrá servido de pauta o elemento de valoración de la porción legítima del cónyuge viudo. Revista de Derecho Privado, Tomo XXVIII, pág. 185, escolio 78, a la pág. 208.

([12]) "Si el usufructuario (sic) se sustituye por alguna de las prestaciones a que se refiere el artículo 838 [equivalente al 765 del nuestro], no existen en el cónyuge los derechos y obligaciones del usufructuario, y en su lugar tendrá las facultades especiales de cada caso." (6 Manresa, ob. cit., págs. 602 a 603.)

usufructuar a Cayure a la muerte de Clotilde murió allí y entonces. Por lo tanto, la segunda condición no podía cumplirse porque ésta dependía de la primera. Así, al morir Clotilde, el usufructo y la nuda propiedad se consolidaron en las hasta entonces, nudas propietarias.

El tribunal sentenciador, sin embargo, resolvió que esas condiciones quedaron eliminadas por el concurso unánime de los herederos voluntarios según expresado en la escritura de partición. Estamos convencidos de que no hubo tal eliminación de las condiciones impuestas por el testador. La disposición undécima del hecho primero de la escritura particional no tiene el alcance que le atribuyen la apelada y el tribunal a quo. La mencionada cláusula aparece a la cabeza de las operaciones de la escritura de partición y cuya parte de la escritura se conoce en la práctica como los *supuestos*. Los supuestos "son las bases de hecho y de derecho sobre las cuales gira toda la partición, como el fallecimiento del testador, número y clase de herederos, disposiciones testamentarias, reglas generales de derecho aplicables, y en suma, todo aquello que sirva para justificar la operación." 5 Valverde, ob. cit., 587. Al mismo efecto, 8 Colin y Capitant, ob. cit., 441. Ahora bien, ¿puede uno de dichos supuestos alterar la voluntad expresa del testador? No. Ya hemos visto que entre dichos supuestos se incluyen las disposiciones testamentarias. Esto no quiere decir que se ha de copiar ahí todo el testamento. Tampoco quiere decir que al hacerse referencia ahí a las disposiciones testamentarias quedara alterada la voluntad del testador. Como cuestión de realidad no se alteró. En el hecho Primero de la Escritura sobre Partición de Bienes las partes hacen constar que don Florencio Santiago y Rivera falleció "bajo testamento abierto que había otorgado ante el fedatario con el número 178 en veinte y nueve de Septiembre de mil novecientos veinte y tres por el que había hecho las disposiciones siguientes:", y a continuación se copian dichas disposiciones, algunas al pie de la letra y otras no, entre

estas últimas, la disposición del testador relativa al usufructo de la finca "Cayure" una vez que falleciera su hermano Clotilde. Ese hecho primero se refiere, pues, a las disposiciones del testador y no a lo convenido por las partes. Tan es así, que al adjudicarse en dicha escritura el usufructo de la finca "Cayure" a don Clotilde se hizo constar en la hijuela de éste, apartado 13º., que dicha finca estaba sujeta a la disposición que hizo el testador en la cláusula 21ª. del testamento, la cual se copia ahí mismo al pie de la letra. En esta cláusula testamentaria, según ya hemos visto, al referirse el testador al usufructo de la viuda, no dice "su usufructo", sino el "usufructo que aquí se le concede", o sea, el usufructo testamentario. Tampoco damos a la cláusula "Duodécima"[13] de la Escritura de Partición el alcance que le da la apelada. Tal cláusula no es un pacto o convenio entre la viuda y los demás herederos voluntarios al efecto de que el usufructo legal, aceptado por la viuda, es el usufructo que le concedió el testador. Fué la voluntad clara y manifiesta del testador que de aceptar la viuda el usufructo testamentario, ella disfrutaría del mismo durante toda su vida si se conservase viuda o hasta que contrajera segundas nupcias. Ahora bien, ¿convino la viuda en esa cláusula que ella perdería el usufructo que se le había adjudicado si contraía segundas nupcias? No lo convino. De ocurrir ese evento los herederos voluntarios no podrían ampararse en tal cláusula para privar a la viuda de su usufructo, pues de dicha cláusula no surge convenio alguno a ese efecto.

Consideremos ahora las defensas planteadas por Eufrosina y que vuelve a levantar en esta apelación. La pri-

---

[13] Dicha cláusula lee así:

"Duodécima. Para mayor claridad la señora Cianchini hace constar que en la presente partición al satisfacerle el usufructo vidual se ha hecho en la cantidad que determina la ley, y que ella al tomar esa decisión lo hizo teniendo en consideración que el fenecido Don Florencio Santiago expresó muy claramente en su testamento y por la cláusula diez y nueve, sus deseos de mejorarla en tal sentido, concediéndole amplias facultades en el manejo de los bienes usufructuarios, y que si así no lo hiciera quedaría incumplida la voluntad del finado."

mera defensa es al efecto de que los apelantes están impedidos de ir contra sus propios actos, citando al efecto los incisos 2 y 3 del artículo 101 de la Ley de Evidencia (artículo 463 del Código de Enjuiciamiento Civil). Sin embargo, la apelada asume, mediante esta defensa, la errónea posición de que en la escritura particional se "reconoció . . . . . el derecho de la viuda apelada a disfrutar del usufructo sobre la finca Cayure al momento de él [Clotilde Santiago] fallecer." Pero es que ya hemos visto que no fué, ni podía ser, ése el efecto de la escritura de partición. Y no encontramos en ninguna parte tal reconocimiento a favor de Eufrosina. Además, no se ha demostrado que Eufrosina haya realizado actuación alguna descansando en ese presunto "reconocimiento" ni que haya cambiado de posición perjudicándose al así hacerlo como para hacer aplicable la doctrina de *"estoppel"* invocada. *Mercado v. Mercado*, 66 D.P.R. 38, 90.

Alega, además, la apelada que el contrato de partición constituye un todo una integralidad, y que no se puede invalidar la sección undécima citada y darle efecto al resto de la partición. Cita al efecto el caso de *McCormick* v. *McCormick*, 64 D.P.R. 296, 300, donde repetimos que "una partición de bienes hereditarios es un todo con partes de tal modo trabadas entre sí que no puede destruirse una parte sin afectar el todo." La apelada vuelve a asumir la posición, del todo errónea, de que "todos los interesados actuaron, aceptaron y ratificaron, como parte integral de la partición, el derecho o interés usufructuario de la viuda en la finca Cayure . . . . ." Ya hemos visto que no fué ese el efecto de la cláusula duodécima de la partición. Y no es necesario que volvamos sobre el caso de *McCormick* citado ya que no estamos invalidando dicha cláusula de la partición.

 Sigue alegando la apelada que al impugnar la eficiencia del párrafo 21 del testamento los apelados están violando la prohibición impuesta por el testador en la cláusula 22ª. del testamento y que dispone:

"Declara: que del remanente de todos sus bienes, acciones y derechos nombra por sus únicos y universales herederos a sus hermanos Don Clotilde, Doña Teresa, Doña Dolores, Doña Rosenda, Doña María y Doña Josefa Santiago y Rivera para que se los distribuyan por partes iguales en completa armonía, como buenos hermanos, sin dar lugar a discusiones ni a desavenencias, pero en el muy dudoso caso de que alguno ó algunos promoviere o quisiere promover pleitos, o se negase a firmar y suscribir las escrituras y demás documentación necesaria para la completa terminación de la testamentaria, o se negase a concurrir a las Juntas o reuniones necesarias de la familia, sin tener una excusa razonable, será entendido que el que tal o tales cosas haga se considerará por mi expresa voluntad sin ningún derecho a la herencia y como si no lo hubiera designado heredero y la parte a él correspondiente acrecentará la porción de los demás herederos que hallan cumplido con las indicaciones del testador."

Sin embargo, tenemos que repetir que los apelados no están impugnando la eficacia del párrafo 21 del testamento. Ellos, al igual que Eufrosina, lo que quieren es aclarar qué quiso decir el testador mediante dicho párrafo para obedecer su voluntad. En realidad, los apelados podrían también alegar lo mismo en cuanto a Eufrosina. Pero es que ambas partes están reclamando lo que legítimamente cree pertenecerles. Y se ha sostenido que una cláusula que priva de la herencia o de un legado al que promoviese un pleito no impide reclamar lo que legítimamente le pertenece. Sentencia del Tribunal Supremo de España reseñada en 30 Revista de Derecho Privado 876, 878, y otras allí citadas; 8 Colin y Capitant, ob cit., 298; 3 De Diego, ob. cit., 131.

 Sigue alegando la apelada que habiéndose celebrado el 20 de abril de 1925 el contrato de partición y que como quiera que "la reclamación o demanda de los herederos voluntarios recurrentes tiene por objeto evidente afectar, impugnar o hacer ineficaces los pactos o convenios de reconocimiento, aceptación y ratificación contenidos en el contrato de partición" dicha reclamación está prescrita, conforme al ar-

tículo 1253. Si resolviéramos que dicho artículo es aplicable a este caso, resultaría que no podríamos dirimir las reclamaciones opuestas de las partes pues igual argumento podrían aducir los apelantes en cuanto a Eufrosina. Pero es que la apelada insiste en asumir la errónea posición de que los apelantes están impugnando lo pactado en el contrato de partición. Y ya hemos visto que no es ésa la situación. Además, el derecho de los apelados a consolidar el usufructo con su nuda propiedad—que es el derecho aquí reclamado—nació al morir Clotilde el 9 de enero de 1949. No era hasta ese momento tampoco que Eufrosina podía reclamar su alegado derecho de usufructo. Por tanto, es esa fecha la que hay que considerar para la cuestión de prescripción. Y habiendo comparecido los apelados a esta acción el 15 de julio de 1949, no está prescrita la acción. Artículo 1869. 12 Manresa, ob. cit., 945.

Finalmente alega la apelada, que "está igualmente prescrita, por el transcurso de 15 años, la impugnación al párrafo 21 del testamento." A esto, sólo tenemos que contestar lo mismo que en cuanto a la anterior defensa, o sea, que las apelantes no han impugnado en ningún momento el párrafo 21 del testamento, sino que antes bien están tratando de hacerlo valer. Además al hacerse las reclamaciones de las partes habían transcurrido solamente poco más de seis meses desde que las mismas hubieran podido hacerse válidamente, o sea, desde que falleció Clotilde, el 9 de enero de 1949. No tiene razón la apelada.

*Debe revocarse la sentencia apelada y dictarse otra declarando que los cánones de arrendamiento consignados pertenecen a las apelantes que son las propietarias ahora en pleno dominio de la finca Cayure.*

El Juez Asociado Sr. Sifre está conforme con el resultado.