Manuel Moreda Toledo, en su capacidad de albacea de la Sucesión de Don Guillermo Rodríguez Benítez, demandante y recurrido, *v.* Maruxa Rosselli Vda. de Rodríguez, José Guillermo Arias Rodríguez y Eduardo José Arias Rodríguez, demandados y recurrentes.

*Número:* RE-93-145          *Resuelto:* 18 de octubre de 1996

*Sylvia E. Cancio González*, abogada de la parte demandada y recurrente; *José Ángel Rey* y *Lino J. Saldaña*, de *Saldaña, Rey & Alvarado*, abogados de la parte demandada y recurrida; *Noel S. González Miranda*, de *McConnell Valdés*, abogado de la parte demandante y recurrida.

El Juez Asociado Señor Corrada Del Río emitió la opinión del Tribunal.

En el caso de autos debemos determinar si, a falta de indicaciones al respecto por parte del causante en su testamento, procede gravar la mejora de los herederos descendientes con el monto del usufructo viudal,[1] a pesar de que la viuda concurre a la herencia con el beneficio del tercio de libre disposición a manera de legado. Los hechos esenciales que dan lugar a la presentación de este recurso de revisión se detallan a continuación.

I

Don Guillermo Rodríguez Benítez falleció en San Juan, Puerto Rico, el 8 de septiembre de 1989, habiendo dejado un testamento ológrafo, protocolizado mediante la Escritura Pública Núm. 1 otorgada el 16 de noviembre de 1989 ante la notario Elba Rosa Rodríguez Fuentes.

---

[1] A través del recurso se podrá observar el uso indiscriminado del vocablo *viudal* y *vidual*; este último de acepción antigua está aceptado, igual que el primero, por la Real Academia de la Lengua Española. No obstante, en el texto del Tribunal preferimos el uso de la palabra viudal por ser ésta la que se utiliza en nuestro Código Civil.

Por ser de gran importancia a los fines de adjudicar este caso, transcribimos literalmente el testamento de Don Guillermo Rodríguez Benítez:

## TESTAMENTO

---En caso de mi fallecimiento antes de hacer un testamento formal, es mi deseo hacer el siguiente legado:-----------------------

---Del tercio de libre disposición lego a la Sra. Maruxa Rosselli, residente en el Condominio Torre de la Reina, San Juan, P.R., trescientos mil dólares ($300,000.00) libre de cualesquiera contribuciones aplicables, que serán pagadas también del tercio de libre disposición.-----------------------------------------------------------------

---Este legado será pagado en efectivo en su totalidad.--------------

---Nombro albacea y administrador de la herencia al Lcdo. Manuel Moreda, también residente del Condominio Torre de la Reina, con todos los poderes que le confiere la ley y los demás que sean necesarios para satisfacer este legado con la mayor prontitud. Relevo al Lcdo. Moreda de necesidad de presentar fianza.-----------------------------------------------------------------------------

---Después de pagado este legado a satisfacción de la Sra. Rosselli, el Lcdo. Moreda pasará todos los asuntos relacionados con la herencia al Lcdo. José Luis Arias, mi yerno, a quien de ahí en adelante nombro albacea. No he nombrado a mi yerno albacea desde un principio para relevarlo de cualquier conflicto de interés que pudiera presentársele.----------------------------------------------

---No he pedido a ningún testigo que firme este documento porque no deseo que otras personas queden informadas de este legado en estos momentos. Guillermo Rodríguez (firma).---------

---San Juan, PR, (8–VIII–83)-----------------------------------------------

---Enmienda No. 1 a mi testamento de 8–VIII–83.------------------

---El legado que hago a la Sra. Maruxa Rosselli será del *total* de la tercera parte de libre disposición, en vez de los $300,000 que se menciona en el testamento a que me refiero.---------------------

---La referencia a las "contribuciones aplicables" será alterada como sea necesario en vista del aumento en el legado al total de libre disposición.-----------------------------------------------------------------

---Lo demás queda sin alterar.---------------------------------------------

---30–1–86, Guillermo Rodríguez (firma)-------------------------------

---Enmienda Núm. 2 a mi testamento de 8–VIII–83.---------------

---1.  Aclaro que el legado que hago a Maru Rosselli es de la cantidad máxima de libre disposición en el momento de mi muerte.-------------------------------------------------------------------------

---2.  El albacea y administrador de mi herencia será el Lcdo. Manuel Moreda a través de todo el proceso de distribución, hasta su liquidación final.------------------------------------------------------

---3.  Maru tendrá derecho a seleccionar lo que ella desee de mi

herencia, el resto a pagársele de contado o en cualquier otra forma que ella desee.------------------------------------------------------------
---SJ, PR 8–VIII–87 Guillermo Rodríguez (firma).------------------
---Hace ya algunos años hice un testamento escrito a mano, y está en un sobre dirigido al Lic. Manuel Moreda. Todo lo que digo allí sigue siendo válido. Quiero, sin embargo añadir lo siguiente: De las 2/3 partes que es herencia forzosa 1/3 es de mi hija Ilia y la otra tercera la lego a mis nietos José Guillermo y Eduardo José por partes iguales.------------------------------------------
---Guillermo Rodríguez (firma).--------------------------------------------
---4 sept. 1989." págs. 5–6.------------------------------------------------
Solicitud de revisión, págs. 5–6.

Al testador le sobrevivió una sola hija y dos (2) nietos, los aquí recurrentes José Guillermo y Eduardo José Arias Rodríguez. La única hija del testador repudió la herencia mediante la escritura pública número ochocientos veinte (820) otorgada el 21 de septiembre de 1989 ante el Notario Rafael F. Morales Cabranes. De esta forma concurren a la herencia como únicos herederos descendientes sus dos (2) nietos y su viuda.

A la fecha de su fallecimiento, el testador estaba casado en segundas nupcias con Maruxa Rosselli, habiendo contraído matrimonio en San Juan, Puerto Rico, el 23 de mayo de 1988, sujeto al régimen de separación de bienes establecido en capitulaciones matrimoniales.

En su testamento, el causante nombró albacea y administrador de la herencia al Lcdo. Manuel Moreda Toledo, y el entonces Tribunal Superior expidió las correspondientes cartas testamentarias el 31 de octubre de 1989. El albacea ha venido administrando desde entonces el caudal hereditario cuyo valor a la fecha del óbito ascendía a $4,582,901.28, según el inventario final y valorización de activos presentado ante el foro de instancia el 31 de marzo de 1992. De esa cantidad, a la fecha del óbito había en el caudal hereditario $4,101,096.06 en acciones, bonos, GNMA's y dinero en efectivo. Casi todas las deudas de las que respondía el caudal han sido satisfechas y actualmente las únicas deudas existentes se refieren a los honorarios

del albacea y a los de sus abogados. El caudal percibe, por otro lado, cuantiosos ingresos anuales por concepto de dividendos e intereses, sin contar el incremento anual de los valores que le pertenecen.

A principios del mes de abril de 1991, la codemandada Maruxa Rosselli solicitó del albacea demandante, Lcdo. Manuel Moreda Toledo, que le propusiera a los codemandados José Guillermo y Eduardo José Arias Rodríguez que se procediera a partir y adjudicar parcialmente el caudal hereditario.

El 18 de abril de 1991 el albacea demandante le notificó a los aquí recurrentes, a través de su representante legal, la petición que a esos efectos recibiera de parte de la señora Rosselli.

Mediante Carta de 22 de mayo de 1991, el albacea solicitó de la señora Rosselli que le hiciera llegar por escrito su posición en cuanto a la partición y adjudicación parcial de la herencia. El 29 de julio de 1991 los aquí recurrentes notificaron su oposición a que se partiese o adjudicase parcialmente la herencia.

El albacea presentó una Solicitud de Sentencia Declaratoria que fue enmendada el 23 de septiembre de 1991 para que el entonces Tribunal Superior resolviera las controversias surgidas entre los coherederos. Apéndice, págs. 101–113. Posteriormente, éste presentó una Solicitud de Sentencia Sumaria Parcial el 3 de octubre de 1991.

Los coherederos adoptaron ciertos acuerdos transaccionales sobre algunas de las controversias existentes y señaladas por el albacea en su Solicitud de Sentencia Declaratoria Enmendada.

El 17 de marzo de 1992 el entonces Tribunal Superior ordenó a todos los codemandados a someter por escrito los fundamentos jurídicos en apoyo a sus respectivas posiciones en cuanto a las controversias existentes entre ellos.

Posteriormente, el 28 de abril de 1992, por orden del Tribunal Superior, todos los coherederos y el albacea pre-

sentaron un escrito titulado "Moción Conjunta Informando Acuerdo Transaccional Parcial" el 28 de abril de 1992, informándole al tribunal de los acuerdos transaccionales habidos entre ellos y cuáles controversias quedaban aún pendientes de resolver. Éstas giraban en torno a los planteamientos siguientes:

a.   Acumulación de legado con cuota viudal usufructuaria.

b.   Monto de la cuota viudal usufructuaria.

c.   Facultades del albacea.

d.   Partición y adjudicación parcial de la herencia.

Finalmente, el 7 de abril de 1992, las partes presentaron sus alegatos y el caso quedó sometido a la consideración del entonces Tribunal Superior, Sala de San Juan (Hon. Evaristo M. Orengo, Juez) cuya sentencia es objeto del presente recurso de revisión.

En su sentencia, el foro a quo resolvió, en síntesis, que en el caso de autos era necesaria una interpretación del testamento en aras de determinar si procedía o no la acumulación de la cuota viudal usufructuaria con el legado del tercio de libre disposición. Al así hacerlo concluyó que era "la voluntad clara y real de don Guillermo fue que a su muerte doña Maruxa recibiera el legado del tercio de libre disposición de su herencia además de la cuota usufructuaria legal". Apéndice de la Solicitud de revisión, págs. 9–10.

Al computar el monto del usufructo viudal, el foro recurrido determinó que en el caso de autos el ulterior repudio de la herencia por parte de la única hija del causante en nada afecta la concurrencia de herederos al momento del cómputo del usufructo, ya que para esos efectos el momento determinante es el de la muerte del causante. De esta forma dicho foro concluyó que a la herencia en este caso, y para los efectos del cómputo del usufructo, la viuda concurría con un solo descendiente, a pesar de que éste había repudiado válidamente la herencia. Concluyó, ade-

más, que "[l]a escritura de repudiación de herencia otorgada por doña Ilia carece de efectos jurídicos en tanto opera en perjuicio de la cuota viudal ...". Apéndice de la Solicitud de revisión, pág. 16. De esta manera el tribunal determinó que la cuota viudal recaería sobre la totalidad del tercio de mejora.

Aducen los recurrentes que incidió el foro a quo:

> ... al declarar que procede la acumulación de la cuota usufructuaria vidual con el legado del tercio de libre disposición adjudicado a la viuda, gravando así el tercio de mejora que el testador le dejó a sus nietos.

> ... al declarar que para efectos de computar el usufructo vidual, el cónyuge viudo concurre a la herencia con la única hija del testador, no obstante ésta haber repudiado la herencia.

> ... al declarar que no existe mejora efectiva en este caso, negándose a tomarla en consideración para determinar el monto de la cuota vidual.

> ... al declarar que para efectos de computar el usufructo vidual, el cónyuge viudo concurre a la herencia con un sólo descendiente del testador decretando que los dos nietos son llamados a heredar por estirpe, representando a la parte repudiante.

> ... al declarar que el testador nombró el albacea a título universal y, consecuentemente, con facultades de contador-partidor.

> ... al declarar que procede la partición y adjudicación parcial de la herencia, en perjuicio de los coherederos recurrentes. Solicitud de revisión, págs. 6–27.

Mediante Resolución de 21 de mayo de 1993 expedimos el recurso de revisión solicitado por los recurrentes para atender los primeros cuatro (4) planteamientos de error. Habiéndose perfeccionado el recurso, estamos en posición de resolver las controversias planteadas y procedemos a así hacerlo.

## II

Los cuatro (4) errores que hemos decidido revisar se circunscriben a distintos aspectos de la figura del usufructo viudal.

El primer señalamiento de los recurrentes versa sobre la procedencia de la acumulación de la cuota usufructuaria viudal con el legado de la totalidad del tercio de libre disposición adjudicado a la viuda, gravándose así el tercio de mejora que corresponde a los nietos recurrentes.

Surge del propio texto del testamento que el causante, Don Guillermo Rodríguez Benítez, adjudicó la totalidad de su caudal. Distribuyó el tercio de mejora entre sus dos (2) nietos, José Guillermo y Eduardo José Arias Rodríguez, en partes iguales; el tercio de libre disposición lo legó a favor de la viuda, Maruxa Rosselli, y el tercio de legítima estricta recayó sobre su única hija, Ilia. Aducen los recurrentes que la repartición que hizo el testador de su caudal, haciendo atribución específica de cada una de las partes que componen la herencia, a saber, la legítima estricta, el tercio de mejora y el tercio de libre disposición, no puede ser alterada por el tribunal de instancia so pretexto de interpretación del testamento, añadiéndole así lo que el testador no tuvo a bien añadirle: *un gravamen vitalicio en contra de sus dos (2) nietos, ya que dicho gravamen recaería sobre la porción de mejora que el testador le atribuyó a éstos en su testamento.* Entendemos que en cuanto a este planteamiento los recurrentes tienen razón. Veamos.

■ Reiteradamente hemos resuelto que el cónyuge viudo es un heredero forzoso, siendo su legítima la cuota viudal usufructuaria. *Vda. de Sambolín v. Registrador*, 94 D.P.R. 320 (1967); *Colón Gutiérrez v. Registrador*, 114 D.P.R. 850 (1983). Así también se desprende del Art. 736 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2362, el cual dispone, en lo pertinente:

Son herederos forzosos:

.      .      .      .      .      .      .      .

(3) El viudo o viuda en la forma o medida que establecen las secs. 2411, 2412, 2413 y 2414 de este título.

■ Los herederos forzosos del testador tienen derecho a participar sobre una porción de la herencia llamada "legítima". Esta "es la porción de bienes [de la cual] el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos". Art. 735 del Código Civil, 31 L.P.R.A. sec. 2361.

■ La legítima equivale a una garantía de participación mínima sobre el caudal hereditario que la propia ley reserva a unas personas llamadas "herederos forzosos". En casos en que el testador le adjudique al heredero una participación menor a la que por ley le corresponda, éste tiene derecho a solicitar que se le complete su "legítima".

Al respecto, el Art. 743 del Código Civil, 31 L.P.R.A. sec. 2369, dispone que:

El heredero forzoso a quien el testador haya dejado *por cualquier título* menos de la legítima que le corresponda, podrá pedir el complemento de la misma. (Énfasis suplido.)

Este artículo ha sido objeto de análisis y comentarios por los más connotados tratadistas del Derecho Civil español, de cuyo código proviene nuestro derecho sucesoral. Manresa, en ocasión de analizar las disposiciones del Art. 815 del Código Civil español, del cual proviene el citado Art. 743 nuestro, expresa que "[e]l heredero forzoso no puede perder su legítima, pero tampoco puede pedir más que la misma. De aquí su derecho a reclamar solamente lo que le falta; el complemento de la porción que forzosamente le corresponde ... cuando el heredero forzoso no ha sido olvidado por el testador, sólo puede reclamar que se complete su legítima". J.M. Manresa, *Comentarios al Código Civil Erpañol*, 8va ed. rev., Madrid, Ed. Reus, 1973, T. VI, Vol. I, págs. 664–668. Sobre este particular, Puig Bru-

tau expresa que "[s]i el testador ha dejado al legitimario, por cualquier título, menos de lo que por legítima le corresponde, es decir, si le ha hecho una *atribución insuficiente*, sólo tiene derecho a pedir el complemento de la [legítima]". (Énfasis en el original.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed. rev., Barcelma, Ed. Bosch, 1983, T. V, Vol. 3, pág. 29.

■ La legítima del cónyuge viudo se limita a una cuota en usufructo sobre los bienes del caudal hereditario. Tal derecho surge del Art. 761 del Código Civil, 31 L.P.R.A. ant. sec. 2411, que disponía:

> El viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge difunto, tendrá derecho a una cuota, en usufructo, igual a la que por legítima corresponda a cada uno de sus hijos o descendientes no mejorados.([2])
> Si no quedara más que un solo hijo o descendiente legítimo, el viudo o viuda tendrá el usufructo del tercio destinado por la ley a constituir la mejora, conservando aquél la nuda propiedad, hasta que por fallecimiento del cónyuge supérstite se consolide en él el dominio.
> Si estuvieren los cónyuges separados por demanda de divorcio, se esperará el resultado del pleito.
> Las disposiciones de esta sección y de las secs. 2412, 2413, 2414, 2415 y 2416 de este título serán aplicables del propio modo a la sucesión intestada que a la sucesión testamentaria.

■ Hemos resuelto que en defecto de una directriz específica al respecto de parte del causante o *de cuius*, y en lo que respecta al legitimario, el legado o mandato hecho a su favor se tendrá hecho a cuenta de su legítima.

Al respecto, en *Calimano Díaz v. Rovira Calimano*, 113 D.P.R. 702, 707 (1983), citamos con aprobación las expresiones de Vallet de Goytisolo en la que se sustenta la

---

([2]) El primer párrafo del Art. 761 (31 L.P.R.A. ant. sec. 2411) fue enmendado mediante la Ley Núm. 25 de 8 de diciembre de 1990. No obstante, al haber fallecido el causante durante 1989, le es de aplicación el artículo antes de la enmienda. Además, en cuanto al alcance de la referida enmienda, ésta no afecta la parte sustantiva del artículo en cuanto a la cuantía del usufructo.

norma general de no acumulación de cuota usufructuaria y legado:

> Nosotros, una vez agotada la posibilidad de resolver la cuestión interpretando la voluntad explícita o implícita del causante, y "ante la necesidad de dar una solución", nos habíamos inclinado también a favor de la acumulación de cuota y legado partiendo de la especial naturaleza de la cuota vidual, respecto de la cual —a diferencia de las otras legítimas— pensábamos entonces que se obtenía "ope legis" por una delación legal directa de dicha cuota.
> Cámara Álvarez, ante este supuesto, ha rechazado tanto la acumulación de legado y cuota como la posibilidad de que el cónyuge viudo opte por aquél y por ésta, y ha afirmado *que el cónyuge viudo deberá aceptar el legado —aunque sea de metálico, que se imputará a su cuota legal—*, pues, cree, que "no existe un llamamiento legal autónomo a favor del cónyuge por su cuota legal usufructuaria", sino sólo subsidiario, en cuanto el valor de lo que el testador le haya asignado no cubra su cuota. Por lo cual, el criterio aplicable a los demás legitimarios, en análogo supuesto, no debe variar tratándose del cónyuge viudo .... [H]emos aceptado esta rectificación de Cámara a nuestra tesis de la naturaleza jurídica de la legítima vidual, por lo tanto, también aceptamos aquí su consecuencia lógica para el supuesto que estudiamos. (Escolios suprimidos.) J. Vallet de Goytisolo, *Limitaciones de derecho sucesorio a la facultad de disponer las legítimas*, 1924, T. I, Vol. 2, págs. 855–856. (Énfasis suplido y en el original.)

En síntesis, la norma que rige en nuestra jurisdicción en torno a la no acumulación de cuota viudal usufructuaria y legados es sencilla. A menos que se desprenda del testamento la *clara* intención del causante de la referida acumulación, cualquier legado se tendrá hecho a cuenta de la legítima del cónyuge viudo. *Vda. de Sambolín v. Registrador*, supra; *Calimano Díaz v. Rovira Calimano*, supra; *Fernández Franco v. Castro Cardoso*, 119 D.P.R. 154 (1987).

Debemos, por lo tanto, examinar el testamento y determinar si de éste se desprende una intención *expresa* del causante de gravar los bienes de sus herederos legítimos con el monto del usufructo viudal.

Al respecto expresamos en *Torres Ginés v. E.L.A.*,

118 D.P.R. 436, 445 (1987), que en ocasión de interpretarse un testamento, el punto de partida será lo dispuesto en el Art. 624 del Código Civil, 31 L.P.R.A. sec. 2129, el cual establece que:

Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador. *En caso de duda* se observará *lo que parezca más conforme a la intención del testador*, según *el tenor del mismo testamento*. (Énfasis en el original.)

Dispusimos en *Torres Ginés v. E.L.A.*, supra, pág. 445, citando al Prof. Efraín González Tejera que:

Un dedicado jurista puertorriqueño compendia satisfactoriamente esta regla básica expresando que "[l]o que en definitiva ordena el Art. 624 es que prevalezca la voluntad real del testador y el rol judicial en materia de interpretación testamentaria consiste en *descubrir dicha voluntad a fin de que se produzcan en su día los efectos queridos por el testador, dentro del marco permitido por ley*. Cuando el lenguaje usado es claro y la intención del disponente se manifiesta diáfanamente de una lectura literal de las disposiciones del testamento, la labor judicial resulta sencilla. Sin embargo, muchas veces el texto del testamento es claro, el lenguaje no ofrece dudas, pero no necesariamente la voluntad real y querida, coinciden con la voluntad expresada. (Énfasis suplido y escolios omitidos.) E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. II, pág. 55.

Un análisis del testamento de Don Guillermo Rodríguez Benítez nos obliga a concluir que éste no dispuso cláusula alguna que refleje su intención de acumular el legado de la totalidad del tercio de libre disposición con la cuota usufructuaria viudal. No se desprende la "intención clara de gravar los bienes que ahora corresponden a sus herederos legítimos con el usufructo vidual". *Fernández Franco v. Castro Cardoso*, supra, pág. 163.

Sin embargo, existe una controversia de hechos entre las partes sobre cuál fue la verdadera intención del causante.

El foro recurrido entendió que la intención del causante era clara en cuanto a su intención de favorecer a la viuda y, por ende, no tuvo en su haber recibir prueba extrínseca al testamento para dilucidar la verdadera intención del causante. Así se desprende de la sentencia recurrida en la que el foro a quo, al entender que del propio testamento surgía la clara intención del causante, expresó que "no [era] menester traer prueba extrínseca para determinar [su] intención ...". Apéndice de la Solicitud de revisión, pág. 3.

Hemos examinado el testamento en el caso de autos y, a pesar de que en éste el causante demuestra tener un conocimiento amplio de las disposiciones legales en torno al derecho sucesoral, debemos tomar en cuenta que la intención del testador puede manifestarse tácitamente. *Colmenero v. Fernández*, 63 D.P.R. 919, 922 (1944). En vista de ello, y requiriendo la normativa aplicable a esta controversia el que se determine si dicha *intención existe*, se hace necesario que devolvamos el caso al foro de instancia para que determine la preeminencia de la voluntad del testador mediante la presentación de prueba extrínseca al testamento. De esta forma nos aseguramos de agotar todos los medios a nuestro alcance que nos permitan demostrar la verdadera intención del causante.

Por consiguiente, concluimos que no procede acumular la cuota usufructuaria viudal con el legado de la totalidad del tercio de libre disposición a menos que se pueda determinar que esa fue la verdadera intención del causante. Dicho juicio podrá ser efectuado analizando las disposiciones del propio testamento conjuntamente con prueba extrínseca al mismo, si la hubiera, que ayude al juzgador de hechos a determinar la verdadera intención del causante.

## III

Debemos determinar, además, con quién concurre la viuda en el caso de autos para efectos del cómputo del usufructo que le corresponda.

■ Si la viuda concurriese con un (1) descendiente, en este caso la única hija del causante, entra en vigor lo dispuesto en el Art. 761 del Código Civil, *supra*, el cual dispone, en lo pertinente, que:

> *Si no quedara más que un solo hijo o descendiente legítimo, el viudo o viuda tendrá el usufructo del tercio destinado por la ley a constituir la mejora*, conservando aquél la nuda propiedad, hasta que por fallecimiento del cónyuge supérstite se consolide en él el dominio. (Énfasis suplido.)

Por consiguiente, bajo esta premisa, a la viuda le correspondería un usufructo que recaería sobre un tercio de la herencia destinado a la mejora.

No obstante, en el caso de autos ocurre una singularidad que varía el cómputo anterior y hace inaplicable la antes citada disposición del Código Civil. Como expresáramos anteriormente, la única hija del causante repudió la herencia de su padre, quedando de esta forma los nietos y la viuda como únicos herederos forzosos.

■ El efecto del repudio es claro e indiscutible en nuestro ordenamiento: el heredero que repudia adviene un extraño a la herencia. El repudio "es un acto de nolición, un rechazo al llamamiento que le hace el advenimiento jurídico". E. González Tejera, *La aceptación y repudiación de herencia*, 48 (Núm. 1) Rev. Jur. U.P.R. 73 (1979). Para todos los efectos legales, se considera que el repudiante nunca llegó a ser heredero. Sobre este particular, señala Manresa:

> ... [L]a retroacción de la repudiación tiene distinto sentido en el sistema germánico que en el Código civil; allí significa que el que fue heredero dejó de serlo, de modo que la repudiación es

una especie de condición resolutoria, mientras que en el régimen del Código civil no tiene otra trascendencia que la de estimar que *no hubo nunca delación o llamamiento sucesorio a favor del repudiante.* (Énfasis suplido.) Manresa, *op. cit.*, 1955, T. VII, pág. 406.

El efecto del repudio se *retrotrae siempre* al momento de la muerte del causante. Así lo dispone el Art. 944 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2772, el cual establece:

Los efectos de la aceptación y de la repudiación se retrotraen siempre al momento de la muerte de la persona a quien se hereda.

■ El principal efecto del repudio es el llamamiento de los descendientes en el grado próximo de sucesión, según lo establece el Art. 886 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2609:

Repudiando la herencia el pariente más próximo, si es solo, o si fueren varios, todos los parientes más próximos llamados por la ley, heredarán los del grado siguiente *por su propio derecho* y sin que puedan representar al repudiante. (Énfasis suplido.)

Es importante notar que los parientes más próximos del causante heredan por *derecho propio* y no en representación del repudiante. De hecho, el citado Art. 886 prohíbe representar al repudiante al disponer: "sin que puedan representar al repudiante."

A esos efectos nos dice Manresa, refiriéndose a los Arts. 933 y 923 del Código Civil español, que son idénticos al Art. 896 (31 L.P.R.A. sec. 2644) y al citado Art. 886 del Código Civil de Puerto Rico, lo siguiente:

Aunque el art. 933 parece suponer que los nietos heredan siempre por derecho de representación, sabemos que el precepto del 923 es terminante, *que no cabe representar al que renuncia una herencia, y, por tanto, que renunciando el padre, por ejemplo, si era heredero único, son llamados sus hijos a la sucesión del abuelo, y no ciertamente por derecho de*

*representación*. (Énfasis suplido.) Manresa, *op. cit.*, 1955, T. VII, pág. 643.

■ En el caso de autos, los nietos del causante heredan por derecho propio la porción de legítima que quedó vacante por el repudio de la única hija del causante. Resulta evidente que el tercio de mejora lo heredan los nietos del causante también por derecho propio, ya que les fue específicamente atribuido por vía testamentaria. Por consiguiente, es de aplicación lo establecido en el primer párrafo del Art. 761, *supra*, el cual disponía, en lo pertinente, que:

> El viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge difunto, tendrá derecho a una cuota, en usufructo, igual a la que por legítima corresponda *a cada uno* de sus hijos o descendientes no mejorados. (Énfasis suplido.)

■ A tenor con lo dispuesto en dicho artículo, y tratándose el caso de autos de una concurrencia múltiple con descendientes (la viuda y los dos nietos), el monto de la cuota del cónyuge viudo sería igual a la que por legítima corresponda a cada uno de los hijos o descendientes legítimos no mejorados. Para computar el monto de la cuota viudal en caso de concurrencia múltiple, es necesario determinar *cuál ha de ser el dividendo y cuál el divisor.* En *Díaz Molinari v. Cividanes*, 37 D.P.R. 297, 310–311 (1927), adoptamos la norma que rige en nuestra jurisdicción para la fijación del dividendo y el divisor al señalar lo siguiente:

> El problema a resolver abarca la fijación de dos puntos de partida, a saber; cuál debe ser el dividendo y cuál el divisor.
>
> En cuanto al dividendo existen tres teorías: la que adopta como tal el máximo, o sea el caudal entero de la herencia; *la que fija el medio o variable, esto es, la legítima larga, deducidas las mejoras que haya hecho el testador*, y la que toma como punto de partida el mínimo, o sea, el tercio de la herencia que constituye la legítima corta o forzosa.
>
> La primera teoría muy pocos partidarios tiene, y es aparente que carece de fundamento sólido alguno; la segunda la sostie-

nen Manresa y Scaevola, y la tercera cuenta con el apoyo de Morell, López R. Gómez, Frimat, Lecaroz, Lozano Sicilia y otros cuyas opiniones sintetiza Scaevola en el tomo 14 de sus Comentarios al Código Civil, página 640 y siguientes.

La cuestión ha sido cuidadosamente estudiada en el seno del tribunal, *llegando al fin a prevalecer unánimemente el criterio expuesto con su claridad y solidez acostumbrados por Manresa* en el tomo Sexto de sus Comentarios al Código Civil, criterio que es además el que en la práctica se ha venido siguiendo en Puerto Rico .... (Énfasis suplido.)

Habiéndose adoptado la teoría del dividendo medio o variable, para determinar éste se ha de tomar la legítima larga y se deducen las mejoras que haya hecho el testador. Aplicando dicha teoría al caso de autos, el dividendo resulta ser el tercio de legítima estricta. Esto es así porque hay que deducir de la legítima larga las mejoras que haya hecho el testador, y en este caso el testador adjudicó la totalidad del tercio de mejora por vía del testamento a sus nietos.

▮ Procede ahora determinar cuál es el divisor. En *Díaz Molinari v. Cividanes*, supra, pág. 314, adoptamos la teoría del divisor máximo, que requiere tomar el número de hijos o descendientes que concurren a la herencia y sumarle el cónyuge viudo. El resultado de esa suma será el número divisor. Por consiguiente, en el caso de autos el divisor es TRES: los dos (2) nietos del causante y el cónyuge viudo. Si tomamos como dividendo un tercio de la herencia y como divisor los dos (2) nietos más el cónyuge viudo, resulta que la viuda tiene una cuota en usufructo sobre *una novena parte* del caudal hereditario.

Así, pues, aun si determinásemos que el cónyuge viudo concurre a la herencia con un sólo descendiente, en la eventualidad de que los nietos concurriesen por estirpe, el usufructo al que tendría derecho dicho cónyuge viudo sería sobre un tercio de la herencia, que recaería sobre el tercio de mejora. El legado de la totalidad del tercio de libre disposición que recibió la viuda excedería de lo que le corres-

 pondería por la cuota usufructuaria, no teniendo derecho a complemento de su "legítima", a no ser que al interpretarse el testamento conjuntamente con la prueba extrínseca, si la hubiera, se concluya que el testador quiso que además del legado del tercio de libre disposición se le adjudicase a la viuda la cuota usufructuaria, en cuyo caso habría que aplicarla contra el tercio de mejora. En el caso de autos, la única hija del causante repudió válidamente la herencia, por lo cual los nietos heredan por derecho propio.

La determinación correcta es a los efectos de que el cónyuge viudo concurre a la herencia con dos (2) descendientes del causante. El usufructo al que tendría derecho dicho cónyuge viudo equivale a una novena parte del caudal hereditario.

## IV

Habiéndose determinado que no procede la acumulación de las partidas de legado y de usufructo viudal, a menos que esa sea la intención expresa del causante, resta determinar la verdadera intención del testador en cuanto a la acumulación o no acumulación del legado y el usufructo, *por lo cual procede que devolvamos el caso al tribunal de instancia para que prosigan los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Fuster Berlingeri concurrió con una opinión escrita. El Juez Asociado Señor Negrón García no intervino. La Juez Asociada Señora Naveira de Rodón se inhibió.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

Aunque concurro con la mayoría del Tribunal en cuanto

al *resultado* concreto que ésta anuncia en su opinión, no estoy de acuerdo con los pronunciamientos de la mayoría, algunos confusos y ambivalentes, relativos a la cuestión de si procede la acumulación de la cuota viudal con el tercio de libre disposición que el causante dejó a la cónyuge supérstite. Dichos pronunciamientos no sólo no están basados en un análisis cabal de las normas y los conceptos jurídicos aplicables, sino que, además, contravienen principios fundamentales del derecho sucesorio. En particular, me *preocupa que los referidos pronunciamientos que estimo erróneos puedan luego aplicarse aún en casos de circunstancias muy distintas a las del de autos, y así dar lugar a resultados injustos contra un cónyuge supérstite.* Veamos.

## I

En su esencia, el caso de autos gira en torno a la cuestión de *cuál fue la voluntad del testador* respecto al *alcance* de lo que éste dispuso a favor de su esposa en su testamento ológrafo. Es decir, lo que debemos determinar principalmente es si el testador tuvo la intención de legarle a su viuda el tercio del caudal hereditario de libre disposición, además de la cuota usufructuaria que le corresponde por ley.

El tribunal de instancia, luego de un examen minucioso del testamento, concluyó correctamente que el testador tuvo la intención de que se acumulase el legado aludido con la cuota viudal. Se basó en el hecho innegable de que el testamento, *sobre todo en sus varias enmiendas en distintos años*, refleja claramente la voluntad del testador de favorecer a la viuda hasta el máximo permitido por ley.

La mayoría del Tribunal entiende, por el contrario, que el testador no hizo indicación específica alguna en su ológrafo de que su intención fuese que se acumulara el legado con la cuota viudal. Por ello, deja sin efecto la conclusión del foro a quo sobre el particular y le devuelve el caso para

que reciba prueba extrínseca sobre la voluntad del testador. Dictamina así porque dicha mayoría entiende que del testamento en este caso no "se desprende una intención *expresa* del causante de gravar los bienes de sus herederos legítimos con el monto del usufructo viudal". (Énfasis en el original.) Opinión del Tribunal, pág. 685.

A. *La norma de interpretación integral del testamento*

La referida determinación de la mayoría, de que del testamento no surge que el causante haya querido acumular su legado a la viuda con la cuota usufructuaria dispuesta por ley, con base a la cual la mayoría deja sin efecto la conclusión afirmativa sobre el particular del tribunal de instancia, descansa escuetamente en el hecho de que el testador no dispuso *expresamente* en el ológrafo su intención de que se acumulasen los dos (2) beneficios hereditarios en cuestión. Tal determinación de la mayoría tiene varios *defectos*, que la hacen seriamente cuestionable. El primero es que es contraria al conocido y esencial principio normativo de que la voluntad testamentaria del causante puede manifestarse *tácitamente*. *Colmenero v. Fernández*, 63 D.P.R. 919, 922 (1944). Si jurídicamente se acepta que la voluntad del testador puede ser implícita, sencillamente no puede considerarse que tal voluntad *no existe* sólo porque no se manifestó explícitamente. El derecho sucesorio reconoce que la voluntad del testador se descubre no sólo de lo declarado *específicamente* en el testamento, sino también de lo que razonablemente se entiende incluido en lo allí declarado. La mayoría contraviene tal norma al hacer su determinación sólo a base de lo dicho específicamente.

La mayoría no sólo menoscaba el principio de que la voluntad del causante puede expresarse tácitamente en su testamento, sino que, además, incurre aquí en el error de razonamiento, conocido como *begging the question*. Cuando la cuestión a decidirse es cuál fue la voluntad real del testador sobre un asunto, es falaz concluir que como no hay voluntad expresa del testador sobre el particular, ello sig-

nifica que éste no expresó su voluntad. Tal determinación no tiene sentido lógico porque de antemano precluye precisamente lo que se pretende indagar. En otras palabras, de la mera ausencia de una disposición *testamentaria expresa* sobre el asunto de la acumulación de los dos beneficios en cuestión, nada definitivo puede concluirse aquí respecto a la voluntad del testador sobre el particular. Como bien se señala en la doctrina, el imperioso proceso de descubrir la voluntad real y querida del testador es uno amplio y abarcador, que no puede ceñirse sólo a lo expresamente especificado en el testamento. Vélez Torres, en su obra *Derecho de Sucesiones*, 1992, pág. 145, indica lo siguiente respecto al proceso de interpretar las cláusulas testamentarias:

> ... [L]a interpretación de los testamentos consiste en una operación intelectual cuya finalidad es la indagación de la voluntad del testador, *aclarando y determinando el sentido efectivo de sus expresiones*, y si es preciso, *llenado las lagunas de sus declaraciones*. (Énfasis suplido.)

Puig Brutau expresa el mismo concepto normativo de esta manera:

> ... [L]a regla general de que ha de estarse al sentido literal de las palabras exige *ante todo* no limitarse al tenor literal de lo dispuesto por el testador, sino que es preciso examinar la última voluntad en su conjunto, como declaración de un testador determinado, para saber si puede ser suficiente tener en cuenta el sentido literal de las palabras que haya usado. Como declaró la *sentencia de 4 de mayo de 1966* (Aranzadi, núm. 2.290), el conocimiento de lo que el testador realmente dispuso no puede resultar de un somero examen de la literalidad de las cláusulas testamentarias. (Énfasis en el original.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1977, T. V, Vol. II, pág. 246.

A tenor con lo antes señalado, para indagar la voluntad real del testador es menester examinar el testamento como un todo, a la luz de lo que se conozca del testador. Ha de examinarse los posibles significados de las palabras usadas por éste en su testamento, para dar a esas palabras " 'el

sentido que sea más conforme a la situación, ideas y hábitos del testador' ". *Torres Ginés v. E.L.A.*, 118 D.P.R. 436, 449 (1987). También ha de hacerse un examen contextual del testamento; es decir, comparando e hilvanando unas cláusulas del documento con otras, descartando así la interpretación aislada de las palabras o frases usadas por el testador. Íd., pág. 448. Esta interpretación integral del testamento, nos señala Puig Brutau, es especialmente pertinente en casos como el de autos, en el cual lo que existe es un testamento ológrafo, otorgado sin la intervención de un notario, por lo que el riesgo de que el testador no haya manifestado su voluntad completamente o con toda claridad es mayor que en otros casos. Puig Brutau, *op. cit.*, pág. 249.

Tal interpretación integral del testamento es la que la mayoría del Tribunal erróneamente no hace en este caso, pero fue la que el foro a quo correctamente realizó.

B. *La interpretación integral del testamento en el caso de autos*

Para comprender bien por qué es que la interpretación del testamento que hizo el tribunal de instancia es correcta, es menester precisar exactamente cuál es la controversia ante nos.

En un caso como el de autos, la cuestión de si procede o no que se acumule el legado del tercio de libre disposición con la cuota viudal alude realmente a una interrogante más básica, que es la siguiente: *¿De qué parte del caudal debe sacarse la cuota viudal en cuestión?* ¿Debe sacarse de la tercera parte del caudal destinado a la mejora de los descendientes, como expresamente dispone el Código Civil en su Art. 762 (31 L.P.R.A. sec. 2412)? o ¿debe sacarse del propio legado del tercio de libre disposición que le hizo el testador a la viuda, ello en virtud del Art. 743 (31 L.P.R.A.

sec. 2369) de dicho código, que contempla que las legítimas pueden pagarse "por cualquier título"?([1])

Es decir, en nuestro ordenamiento jurídico la viuda se designa como "heredera forzosa" y su cuota es una legítima fijada por ley, que el testador no puede negar, condicionar, limitar o preterir de modo alguno. Arts. 736 y 742 del Código Civil, 31 L.P.R.A. secs. 2362 y 2368. Véanse: *González de Salas v. Vda. de González*, 99 D.P.R. 577 (1971); *Vda. de Sambolín v. Registrador*, 94 D.P.R. 320 (1967); *Díaz Lamoutte v. Luciano*, 85 D.P.R. 834 (1962); *Luce & Co. v. Cianchini*, 76 D.P.R. 165 (1954). Ahora bien, aunque el testador no puede disponer de la cuota viudal, nada impide que éste pueda instituir al cónyuge supérstite en una porción *mayor* del caudal hereditario que la que le asigna la ley. *Vda. de Sambolín v. Registrador*, supra; *Luce & Co. v. Cianchini*, supra. Cuando ello ocurre, como sucedió en el caso de autos, surge el problema de precisar si la cuota viudal, que es impreterible, debe sacarse del tercio de mejoras, como de ordinario lo manda la ley, en cuyo caso dicha cuota se añade al legado que también le hizo el testador al cónyuge supérstite (se acumulan) o, en cambio, si la cuota viudal debe considerarse como "pagada" mediante el legado aludido, si éste es mayor que la cuota viudal, en cuyo caso no se acumulan ambos beneficios y el legado en cuestión en efecto sólo consiste en lo que el mismo exceda al monto de la cuota viudal.

Para determinar cuál de estas dos alternativas, sobre el pago de la impreterible cuota viudal, fue la querida por el testador, ausente una declaración expresa de éste sobre el particular, es menester interpretar a fondo el testamento en busca de la voluntad tácita del causante, como lo hizo el

---

([1]) Según se explica más adelante en la última parte del acápite III de esta opinión, como una legítima puede pagarse "por cualquier título", cuando al legitimario se le hace un legado, surge el problema de si el testador se lo hizo *en adición* a la legítima o si, en cambio, se hizo el legado *en pago* de la legítima. Para resolver este problema, es menester indagar la voluntad del testador.

tribunal de instancia y como, erróneamente, se niega a hacer la mayoría aquí.

En este caso, el testador evidentemente tenía, al menos, conocimientos elementales sobre el derecho sucesorio. *La mayoría, incluso, cree que éste tenía un "conocimiento amplio" de ese derecho.* Por ello, seguramente sabía que su esposa tenía por ley un derecho impreterible a una legítima viudal. Conocía también que tenía derecho a disponer libremente de un tercio de su caudal, como lo hizo, y que podía instituir a algunos de sus descendientes en otro tercio de su caudal, como *mejora*, como lo hizo él, al destinar ese tercio expresamente a sus nietos. Por lo anterior, seguramente sabía, además, que el Código Civil claramente dispone que cuando hay descendientes la cuota viudal debe sacarse de la tercera parte de los bienes que la ley permite al testador destinar a la mejora de éstos, la cual queda así gravada. En vista de ello, al indicar expresamente el testador, *en dos enmiendas distintas* al testamento, que le dejaba a su esposa el *"total"* del tercio libre, y *"la cantidad máxima* de libre disposición"*, ello era indudablemente equivalente a decir *sin reducción alguna*. O sea, que evidentemente no sólo quería dejarle a su esposa *más beneficios* que los de la cuota usufructuaria, sino que, además, el tercio que le dejaba era completo, *sin que pudiera imputársele a éste el pago de la legítima viudal*. En vista, pues, de tales expresiones en el testamento, parece inevitable concluir, como lo hizo el tribunal de instancia, que la voluntad real y querida del testador fue que se acumulasen los dos beneficios en cuestión, y que la cuota viudal se pagase, tal como dispone el Código Civil, del tercio de mejora. El foro de instancia, pues, interpretó correctamente la voluntad del testador.

Esta certera interpretación del testamento en cuestión se apoya, además, *en lo expuesto en la doctrina civilista*. De hecho, *el propio Vallet de Goytisolo*, en cuya opinión descansa la mayoría en este caso, y en cuya opinión descansó

este Tribunal tanto en *Calimano Díaz v. Rovira Calimano*, 113 D.P.R. 702 (1983), como en *Fernández Franco v. Castro Cardoso*, 119 D.P.R. 154 (1987), *siempre* ha sostenido que parece evidente la voluntad del testador de *acumular* ambos beneficios "cuando el testador lega concretamente en propiedad o en usufructo toda la parte de libre disposición a su esposa, sin aludir a la cuota legal", que es lo que ocurrió en este caso. J. Vallet de Goytisolo, *Atribución, concreción del contenido y extinción de las legítimas*, 25 (Núm. 1) An. Der. Civ. 3, 102–103 (1972).

Por todo lo anterior, este Tribunal ha debido confirmar la conclusión del foro de instancia de que en este caso procedía la acumulación del legado y la cuota viudal. Es claramente errónea la decisión de la mayoría de no hacerlo.

## II

Como ya se ha señalado, la mayoría en este caso no realiza la interpretación cabal del testamento en cuestión que en Derecho procede, por aferrarse a la errada idea de que la acumulación del legado con la cuota viudal sólo puede hacerse si el testador ha dispuesto *expresamente* tal acumulación. Como en el testamento en cuestión no existía una cláusula expresa a tales fines, la mayoría ni siquiera intenta hacer una interpretación integral del mismo, para indagar de ese modo la voluntad real del testador y ver si la voluntad se manifestó tácitamente. La mayoría sencillamente no hace una interpretación del testamento.

No obstante lo anterior, la mayoría finalmente ordena que se devuelva el caso a instancia para que reciba prueba extrínseca al testamento sobre la voluntad del testador en cuanto al asunto en cuestión. Es decir, sin haber "*agotado* la posibilidad de resolver la cuestión *interpretando* la voluntad explícita o *implícita* del causante" —como requiere la doctrina civilista y según lo pautamos en *Calimano Díaz v. Rovira Calimano*, supra, pág. 707, y en *Fernández*

*Franco v. Castro Cardoso*, supra, pág. 162— la mayoría contradictoriamente ordena al foro a quo a recibir prueba extratestamentaria para adjudicar la cuestión medular de este caso, cuestión que ella misma rehusó esclarecer por medio de una interpretación integral del testamento.

Para entender esta inusitada orden de la mayoría es necesario explicar que en este caso aparentemente *existía prueba extrínseca al testamento* con arreglo a la cual se podía aclarar la cuestión de la intención del testador, *pero el tribunal de instancia no la recibió.* La mayoría del Tribunal omite señalar este dato crucial en su opinión.(²) El 7 de abril de 1992, en su contestación a la orden del tribunal de instancia de 17 de marzo de 1992, requiriéndole a las partes que sometiesen por escrito los fundamentos jurídicos de sus respectivas posiciones, la viuda recurrida hizo constar en su escrito que se proponía ofrecer prueba extrínseca al testamento para demostrar cuál era la intención del testador sobre el asunto en cuestión. Igualmente, en su alegato ante nos, el albacea, nombrado precisamente por el testador, aduce que tal prueba extrínseca al testamento existe. No obstante lo anterior, el foro de instancia, correctamente, no recibió la prueba aludida. Entendió dicho foro que la voluntad del testador a favor de la acumulación surgía claramente del propio testamento, por lo que "no [era] menester traer prueba extrínseca para determinar [su] intención ...". Sentencia de instancia, pág. 3. A esta prueba es que se refiere la mayoría del Tribunal en su súbita orden de devolver el caso a instancia para que la reciba.

Concurro con el curso de acción ordenado por la mayoría *sólo porque es el menor de dos males.* Es decir, frente a la postura medular de la mayoría de no indagar la intención tácita del testador por entender que sólo es efectivo lo especificado expresamente en el testamento, que en Derecho constituye un abandono de la responsabilidad judicial de

---

(²) Igualmente omite discutir cuál es la base procesal para ordenar nueva prueba, una vez concluido el pleito en instancia. Véase esc. 5, *infra.*

descubrir la voluntad real y querida del testador, es mejor investigar esa voluntad supletoriamente, mediante prueba extrínseca, que no investigarla de modo alguno, que era lo que la mayoría se inclinaba a hacer inicialmente.([3]) Como hemos indicado ya, lo correcto hubiese sido realizar una interpretación integral del testamento. Como la mayoría ha rehusado hacerlo, es al menos un paliativo de su error el que se ordene que se reciba prueba extrínseca sobre el asunto en cuestión. Se abre así alguna oportunidad de descubrir la voluntad real del testador. Se evita igualmente la revocación definitiva del dictamen de instancia, lo cual hubiese sido un craso error. Por ello, le propuse a la mayoría que si no iba a interpretar el testamento en este caso, al menos debía ordenar que se recibiese la prueba extrínseca que sobre el asunto se había ofrecido en instancia. La mayoría acogió mi recomendación y la incorporó como el mandato esencial del Tribunal en este caso. Debo, pues, concurrir con esta parte de la decisión mayoritaria.([4]) Sin embargo, debe quedar claro que este proceder de la mayoría, *a la luz de su postura medular sobre la cuestión de la acumulación del legado con la cuota viudal,* apareja ambivalencias y confusiones conceptuales que no deben pasar desapercibidas.

En primer lugar, y según se ha intimado ya, de ordina-

---

([3]) Reiteradamente hemos resuelto que "la voluntad del testador es la ley de la sucesión". *Fernández Franco v. Castro Cardoso,* 119 D.P.R. 154 (1987); *Calimano Díaz v. Rovira Calimano,* 113 D.P.R. 702 (1983); *Vda. de Sambolín v. Registrador,* 94 D.P.R. 320 (1967). Tal es el principio rector en esta área del Derecho. J. Puig Brutau, *Fundamentos de Derecho Civil,* 2da ed., Barcelona, Ed. Bosch, 1977, T. V, Vol. II, pág. 227. La preeminencia de la voluntad del testador exige que los tribunales usen todos los medios a su alcance, comenzando con la interpretación integral del testamento, para establecer cuál es "la verdadera y exacta intención del testador", con la mayor certeza posible. J.L. Lacruz Berdejo, *Derecho de Sucesiones,* 1971, Vol. I, pág. 469; *Torres Ginés v. E.L.A.,* 118 D.P.R. 436 (1987); *Rivera Padró v. Rivera Correa,* 93 D.P.R. 196 (1966); *Colmenero v. Fernández,* 63 D.P.R. 919 (1944).

([4]) Si a pesar de la interpretación integral del testamento aún quedasen dudas sobre la intención real del testador, no sólo procedería que se reciba prueba extratestamentaria, sino que, además, en revisión procedería devolver el caso al foro a quo para que reciba y evalúe tal prueba (si ésta se ofreció inicialmente en instancia, pero no se recibió) conforme lo dispuesto en la Regla 5 de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV.

rio el uso de la prueba extratestamentaria procede sólo cuando aún quedan dudas sobre la voluntad del testador después de haber agotado la posibilidad de resolverlas mediante la interpretación integral del testamento. Se trata de un medio *supletorio* de prueba que procede propiamente cuando no se ha podido descubrir la intención tácita del testador mediante un análisis cabal de su testamento. Así lo reconocimos expresamente en *Torres Ginés v. E.L.A.*, supra, pág. 450, cuando señalamos que "una vez agotada sin éxito la etapa de interpretación, en sí, de la disposición *mortis causa* por medios intrínsecos[,] es permisible acudir a prueba extrínseca". (Énfasis en el original.) En este caso la mayoría ordena recibir prueba extratestamentaria, a pesar de que no cumplió con el requisito jurídico para ello de agotar antes el medio de la interpretación integral del propio testamento.

En segundo lugar, dicha orden se justifica erróneamente por la mayoría. La razón que ésta da para que se reciba la prueba extrínseca carece de fundamento. Es un claro dislate resolver, como lo hace la mayoría en este caso, que ordena que se reciba prueba extrínseca al testimonio porque "debemos tomar en cuenta que la intención del testador puede manifestarse tácitamente". No cabe duda de que ello hay que tomarlo en cuenta, pero es, como ya se ha señalado, para ahondar en la interpretación del testamento en sí, no para ordenar recibir prueba extratestamentaria. En otras palabras, es confuso justificar el recurrir a prueba extrínseca, sobre la base de que hay que tomar en cuenta la intención tácita del testador, cuando tal intención no se ha indagado en el propio testamento. La referida prueba procede sólo para resolver las dudas que puedan haber sobre lo dispuesto en el testamento, luego de haberlo interpretado de modo integral, en busca precisamente de la intención tácita del testador. Si aun así no se logra descubrir la voluntad real del testador, si no parece haber una voluntad tácita contenida en la literalidad de

las cláusulas testamentarias, entonces es que está justificado de ordinario recurrir a prueba extrínseca al testamento para de ese último modo tratar de precisar su intención cabal. Como señala Puig Brutau, citando a García Amigó, la prueba extrínseca consiste, en esencia, de otras *expresiones* del testador que manifiesten su voluntad sobre el asunto en cuestión, tales como cartas, diarios, testamentos anteriores u otras que sean pertinentes. Puig Brutau, *op. cit.*, pág. 256. La mayoría enreda una cosa con otra al decir que se debe admitir la prueba sobre esas otras expresiones del causante para descubrir lo tácito en su testamento.

Finalmente, es menester destacar el carácter contradictorio del referido dictamen mayoritario. Por un lado se insiste en que, respecto a la cuestión que nos concierne, *sólo* tiene eficacia la manifestación *expresa* en el testamento de la intención del causante de que se acumulase el legado a la viuda con su cuota usufructuaria; por otro lado, también se resuelve que debe determinarse por prueba extrínseca cuál era la intención tácita del testador en cuanto a dicha acumulación. Se trata de dos posturas que son realmente incompatibles: si sólo cuenta lo dispuesto *expresamente* en el testamento, ¿para qué se va a recibir prueba extratestamentaria? Aun así, la mayoría sostiene ambas posturas a la vez de manera enmarañada, contradictoria y ambivalente.

## III

La mayoría de este Tribunal fundamenta su dictamen medular sobre la acumulación de los beneficios hereditarios en cuestión en nuestras decisiones anteriores en *Calimano Díaz v. Rovira Calimano,* supra, y en *Fernández Franco v. Castro Cardoso,* supra. Este proceder es realmente de dudosa validez. El caso ante nos presenta la oportunidad de formular la norma correcta. Veamos.

En *Vda. de Sambolín v. Registrador*, supra, cuando por primera vez nos expresamos sobre el asunto que nos concierne aquí, la controversia que encaraba este Tribunal era si podía acumularse la cuota viudal, con el legado que le había hecho el testador a su esposa de la mitad del caudal, sin gravar con la referida cuota usufructuaria el otro legado del resto del caudal que el testador había dejado a sus sobrinos. *Para fundamentar la opinión emitida, este Tribunal descansó esencialmente en lo resuelto por el Tribunal Supremo de España en dos sentencias distintas, una de 3 de junio de 1947 y otra de 21 de febrero de 1900.* Señalamos entonces, correctamente, que el Tribunal Supremo español en estos casos había resuelto que "cuando la voluntad del testador no se haya manifestado claramente en sentido opuesto, el Art. 815[, Art. 743 nuestro,] no impide que se acumule con la herencia forzosa lo voluntariamente dejado ...". Íd., pág. 329.

Nótese cuál es la norma precisa del Tribunal Supremo de España bajo la cual este Tribunal amparó su dictamen en *Vda. de Sambolín v. Registrador*, supra: que si el testador no expresó claramente que *no* se acumulase la cuota viudal (herencia forzosa) con el legado voluntario, entonces la cuota y el legado se acumulan. Es decir, la norma jurisprudencial española, citada en *Vda. de Sambolín v. Registrador*, supra, como fuente de autoridad, es que la acumulación siempre procede, a menos que el testador hubiese expresado claramente que no deseaba tal acumulación. De modo que si el testador nada dice sobre el particular, la cuota y el legado se acumulan. La acumulación es la regla, a menos que el testador claramente disponga lo contrario. Esa es, sin duda, la postura normativa en la jurisprudencia española. Véase L. Díez-Picazo y Ponce De León, *Estudios sobre la Jurisprudencia Civil*, 2da ed., Madrid, Ed. Tecnos, 1976, Vol. III, págs. 289–292. Sin embargo, este Foro, aunque inicialmente adoptó expresamente la norma española, la ha reformulado luego *a modo inverso*. En vez

de afirmar que la acumulación es lo usual —a menos que el testador claramente haya hecho una excepción, que es la norma del Tribunal Supremo español— en nuestros precedentes recientes se ha expresado que la acumulación procede si esa fue la intención del testador. Lo que para el Tribunal Supremo de España es una *excepción* a la acumulación, en nuestras opiniones se convierte en una *condición* para la acumulación.

¿Porqué ha ocurrido esta inusitada inversión de la norma del Tribunal Supremo español que pretendimos adoptar en el citado caso matriz *Vda. de Sambolín v. Registrador*, supra? La explicación se encuentra en un señalamiento hecho tanto en *Calimano Díaz v. Rovira Calimano*, supra, como en *Fernández Franco v. Castro Cardoso*, supra. En esas dos decisiones, *sorprendentemente*, justificamos la norma en cuestión, no a base de las sentencias del Tribunal Supremo español, que eran la fuente originaria, sino a base del *nuevo* criterio sobre el particular del comentarista Vallet de Goytisolo. Éste había sostenido inicialmente, en 1948, que la cuota usufructuaria debía acumularse con el legado testamentario de la viuda, a menos que el testador lo hubiese prohibido. Pero luego cambió su posición al indicar que creía entonces que la correcta era la opinión, en sentido inverso, del notario Manuel de la Cámara Álvarez. El cambio de postura de Vallet ocurrió en 1972 y las dos aludidas decisiones nuestras se emitieron en 1983 y 1987, respectivamente.

Nótese, sin embargo, que en dichas dos decisiones *no hubo referencia alguna* a las dos sentencias del Tribunal Supremo español que habían sido la fuente de autoridad en *Vda. de Sambolín v. Registrador*, supra, y que continúan vigentes. Por otro lado, es menester señalar también que el criterio de De la Cámara Álvarez, sobre el cual se basó Vallet para cambiar su postura inicial, *a su vez ha variado*. Recientemente, en 1990, De la Cámara Álvarez rectificó su determinante criterio sobre la naturaleza de la

cuota viudal usufructuaria como una delación *ex lege*. De La Cámara Álvarez, *Compendio de Derecho Sucesorio*, Madrid, 1990, págs. 177–180. Ello significa qué ahora De la Cámara Álvarez admite que es correcta la opinión inicial de Vallet, y no su segunda opinión, en la cual basamos las nuestras en *Calimano Díaz v. Rovira Calimano*, supra, y en *Fernández Franco v. Castro Cardoso*, supra. Si este Tribunal descansó total y mecánicamente en la autoridad de un comentarista para formular su criterio y éste cambia su postura, nos toca cambiar la nuestra. Eso fue precisamente lo que hicimos en los dos casos aludidos, y lo que debemos volver hacer ahora.

Finalmente, debe tenerse en cuenta que muy respetables comentaristas españoles han coincidido con la postura del Tribunal Supremo de España y han considerado que el cónyuge supérstite favorecido con un legado por el cónyuge que falleció tiene derecho, además, a la cuota viudal, salvo que el testador hubiese dispuesto lo contrario. Tal es el caso de eminentes juristas como Sánchez Román (véase su *Estudio de Derecho Civil*, 2da ed., T. IV, pág. 830); Amadeo de Fuenmayor (*Acumulación en favor del cónyuge viudo dé un legado y de su cuota legitimaria*, 179 Rev. Gen. Leg. Jur. 42–90 (1946)); Charrin (*Legado en propiedad del tercio de libre disposición: ¿Tiene derecho también a la adjudicación de la cuota legal en usufructo?*, 122 Boletín Rev. Gen. Leg. Jur. 20 (1904)), y M. Peña Bernaldo de Quirós (*La naturaleza de la legítima*, 38 (Núm. 4) An. Der. Civ. 849, 906–907 (1985)).

Manresa también ha sostenido la norma jurisprudencial española. En su obra *Comentarios al Código Civil Español* indica que

[l]a colación se funda en la presunta voluntad del causante, de que sus herederos forzosos sean igualados en su sucesión. Mas si el testador deja especialmente un legado a uno de sus herederos, es evidente que no quiere que ese legado se agregue o colacione al fondo partido por igual, sino que distingue al legatario .... Manresa, *op. cit.*, 1955, T. VII, pág. 638.

*Luego pasa a dar un ejemplo de lo anterior* y cita con evidente aprobación la Sentencia del Tribunal Supremo de España de 21 de febrero de 1900 e indica que "pueden perfectamente coexistir la voluntad del testador con el precepto de ley" y que la viuda puede recibir "además del tercio de los bienes dejados en testamento, otro tercio en usufructo por su legítima", salvo que el testador, de manera "casi inconcebible", haya ordenado lo contrario.

Don José Puig Brutau, por su parte, en su obra *Fundamentos de Derecho Civil*, decía lo siguiente:

> ... Por supuesto que, como en toda esta materia, *ha de atenderse ante todo a la voluntad del testador.* En su defecto, dada la índole de la legítima del cónyuge, es lo más admisible estimar que el legado ha sido ordenado al margen del derecho legitimario del cónyuge viudo y procederá, por tanto, acumular la cuota legal y el legado. (Énfasis suplido y escolio omitido.) Puig Brutau, *op. cit.*, 1964, T. V, Vol. III, págs. 157–158.

En cambio, en la tercera edición revisada y puesta al día de su obra (1983), bajo la influencia de De la Cámara Álvarez y de Vallet de Goytisolo, indica en cuanto al legado a favor del cónyuge:

> ... Por supuesto que, como en toda esta materia, *ha de atenderse ante todo a la voluntad del testador.* En su defecto, parece lo más seguro seguir en este caso el mismo criterio que ha sido mantenido tratándose de los demás legitimarios. (Énfasis suplido.) Puig Brutau, *op. cit.*, 1983, T. V, Vol. III, pág. 132.

El criterio aludido, respecto a los demás legitimarios, es a los efectos de que si los legitimarios no han sido instituidos herederos, y el testador no ha manifestado una regla de imputación, entonces debía estimarse que el legado es imputable a la legítima; pero que si ha dispuesto un legado a favor de alguno de los legitimarios, cuando todos ellos han sido instituidos herederos, entonces "parece indudable que [el legado] no se recibirá a cuenta de lo que todos los herederos tienen en común, sino como algo suplementario ... excepto cuando el testador ha ordenado lo contrario ...".

Puig Brutau, *op. cit.*, 1983, pág. 131. Es de suponerse que, en vista del cambio de postura de De la Cámara Álvarez, prevalece la opinión original de Puig Brutau.

A la luz de la postura del Tribunal Supremo de España, en vista también del referido historial de la norma en cuestión, y considerando además los criterios de los eminentes comentaristas citados, procedería que este Tribunal rectifique lo expresado en los citados casos *Calimano Díaz v. Rovira Calimano* y *Fernández Franco v. Castro Cardoso*, para volver a la formulación original de la norma, que es la correcta, según se identificó en *Vda. de Sambolín v. Registrador*, supra.

Esta conclusión se apoya, además, en una consideración de las disposiciones pertinentes del Código Civil y de los propósitos de las figuras jurídicas concernidas.

Para iniciar esta otra parte del análisis conviene preguntarse: ¿Cuál es el interés cuya protección se persigue? ¿Qué es lo que hay en el fondo de este esotérico asunto? ¿Por qué es que ha surgido entre algunos comentaristas esta problemática sobre la cuota viudal cuando coincide con un legado para el cónyuge supérstite?

Para precisar estas interrogantes, nótese que si un testador que tiene hijos lega escuetamente el tercio de libre a un *extraño*, los hijos sólo pueden recibir como máximo los otros dos tercios de la herencia, gravada su parte de la herencia en lo correspondiente por la cuota viudal. Si un *extraño* puede recibir tal legado sin mayores complicaciones ¿por qué no el cónyuge viudo? ¿Por qué en el caso de cónyuge supérstite hay que encarar la problemática que nos concierne aquí y en el caso del extraño no? ¿Tiene el cónyuge viudo alguna *inferioridad* jurídica que le impide recibir sin complicaciones lo que un extraño puede obtener de tal modo? ¿Dispone el Código Civil alguna inferioridad tal?

Lo que hay en el fondo de esta cuestión, que el propio Vallet de Goytisolo, *supra*, pág. 33, ha dicho que "parece

completamente bizantina", es un problema respecto al cual el Código Civil carece de normas expresas: *cómo deben imputarse los legados hechos a favor de legitimarios.* Como se sabe, el pago de la legítima puede hacerse "por cualquier título". Art. 743 del Código Civil, *supra.* Por ello, cuando al legitimario se le hace un legado, surge el problema de si se le hizo suplementariamente o si se hizo en pago de la legítima. Cuando el legitimario ha recibido *donaciones,* también surge un problema parecido. Pero en este caso el problema es más sencillo, ya que el Código Civil tiene algunas disposiciones que atienden la cuestión de donaciones otorgadas a favor de legitimarios. El citado código, sin embargo, no tiene reglas para el caso de los *legados* a éstos. Véase Puig Brutau, *op. cit.*, 1983, págs. 130–133. Por ello, un comentarista de Puerto Rico ha afirmado que "[l]a atribución de la legítima en forma de legado plantea *siempre* un problema de interpretación testamentaria ...". (Énfasis suplido.) E. González Tejera, *Derecho Sucesorio Puertorriqueño,* San Juan, Ed. Ramallo, 1983, Vol. II, pág. 417.

Para resolver ese problema, tanto Vallet como Puig Brutau, y en general toda la doctrina, sostienen el criterio de que debe indagarse esmeradamente primero cuál fue la voluntad real y querida del testador que hizo el legado. En su defecto —*y sólo cuando tal indagación se ha agotado sin poder resolver el problema*— los comentaristas proponen *reglas supletorias* basadas en sus particulares concepciones sobre la naturaleza de las legítimas. *La referencia a las hipótesis o teorías jurídicas sobre esta institución, sin embargo, a veces sólo sirve para complicar aún más la cuestión,* ya que los comentaristas no coinciden en sus respectivas concepciones sobre la misma, por lo que terminan formulando criterios dispares sobre cómo resolver el problema aludido. En particular, en la doctrina ha existido muchísima discusión sobre la naturaleza jurídica de la cuota viudal y, por lo tanto, sobre la cuestión de si el legado al cónyuge viudo es en pago de su legítima. Vélez Torres,

*op. cit.*, págs. 239–240. Ello se debe mayormente al hecho de que la legítima viudal es de cuño relativamente reciente. F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, Vol. VI, pág. 479. Como se sabe, la institución de la legítima de descendientes y ascendientes estaba perfilada ya en la obra de Justiniano. Llega al Código Civil desde el viejo Derecho romano por conducto de las Partidas. En cambio, no es hasta 1888 que se reconoce una modalidad de la cuota viudal en la legislación general española, y en 1958 cuando finalmente se subsanan en el Código Civil español los grandes defectos que tenía la referida institución del derecho legitimario del cónyuge viudo. Puig Peña, *op. cit.*, págs. 480–481.

El origen bastante moderno del referido derecho viudal provoca que la cuestión de los derechos del cónyuge viudo haya sido una de las más debatidas en la doctrina. Puig Peña, *op. cit.*, pág. 479. Algunos, como Puig Peña, recordando "cómo el cónyuge viudo veía aumentado su dolor por la muerte de su consorte, por el abandono económico, entrando en la pobreza ... mientras los demás parientes del difunto disfrutaban alegremente del patrimonio", han declarado que "[l]a legítima del cónyuge viudo, pues, es una institución que no sólo responde a la más estricta justicia, sino al más puro pensamiento de equidad ...". Puig Peña, *op. cit.*, pág. 481. Este Tribunal, al interpretar lo relativo a los derechos sucesorales del cónyuge viudo, debe honrar esta ilustrada concepción de comentaristas como Puig Peña y descartar interpretaciones que tienden a menoscabar la cuota viudal.

La afirmación de que sí procede la acumulación de la cuota viudal con el legado dispuesto a su favor, ausente una prohibición clara en sentido contrario del testador, ha sido la clara respuesta del más alto Foro judicial español a lo que en la doctrina ha sido un espinoso dilema, objeto de vaivenes conceptuales, según se ha explicado antes. Vallet,

al comentar la postura del Tribunal Supremo español, admite que en sus dos sentencias en cuestión "transpira" la preocupación de ese tribunal "de que su fallo fuera justo". Indica, además, que en ambos el resultado dimanaba "de la fiel interpretación de la voluntad del testador". Vallet de Goytisolo, *supra*, págs. 103–104.

Parecería, pues, en resumen, que este Tribunal debe seguir no sólo la pauta más correcta, sino también la más justiciera, que es la del Alto Foro español. Conforme a ella debemos rectificar los pronunciamientos de *Calimano Díaz v. Rovira Calimano* y *Fernández Franco v. Castro Cardoso*, para formularlos precisamente como lo hizo el Tribunal Supremo de España, como los identificamos en *Vda. de Sambolín v. Registrador*, supra, inicialmente, y como el propio Vallet de Goytisolo los expresaría hoy. De ese modo correspondería, en primer lugar, *indagar a fondo*, con arreglo a una interpretación integral del testamento y luego de la prueba extrínseca disponible, cual fue la voluntad real y querida del testador. Ello conforme lo discutido sobre el particular en las partes I y II de esta opinión. Si agotado ese camino no surgiese una clara intención en contrario, procedería entonces la *acumulación* de los beneficios aludidos. La mayoría lamentablemente no sigue este curso de acción, que es a todas luces el acertado. Prefiere invocar mecánicamente, sin análisis cabal, o buen juicio jurídico, las expresiones en *Calimano Díaz v. Rovira Calimano* y *Fernández Franco v. Castro Cardoso*, que tenían su razón de ser cuando se emitieron, pero que no reflejan ya lo mejor del pensamiento jurídico pertinente.