Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| XIOMARA SERRANO NEGRÓN, *et als.* Parte Apelada v. MARISOL MARTÍNEZ OTERO; JENNIFER SERRANO HERNÁNDEZ Parte Apelante | TA2026AP00167 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas Caso Núm. CG2024CV03134 Sobre: Impugnación o Nulidad de Testamento |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2026.

Comparecen ante nosotros la señora Jennifer Serrano Hernández y la señora Marisol Martínez Otero (señoras Serrano Hernández y Martínez Otero, o parte apelante) mediante recurso de apelación. Solicitan la revocación de la *Sentencia* emitida el 15 de enero de 2026 y archivada y notificada en autos al siguiente día, por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.[1] En lo específico, nos solicita que revoquemos la determinación del TPI mediante la cual declaró con lugar la demanda de impugnación de testamento por desheredación injusta, instituyó como legitimarios del causante Héctor Luis Serrano Serrano (testador) a sus hijos, Xiomara Serrano Negrón, Yazmin Serrano Negrón y Normand Serrano Cordero, y ordenó que se les otorgara su parte de la legítima estricta, a ser dividida en partes iguales entre éstos y la parte apelante.

---

[1] *Sentencia*, SUMAC en el recurso CG2024CV03134, entrada 49.

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El 28 de agosto de 2024, Xiomara Serrano Negrón, Yazmin Serrano Negrón y Normand Serrano Cordero (señora Serrano Negrón *et al.*) incoaron la acción de referencia, en la que impugnaron el testamento otorgado el 12 de octubre de 2022 por su padre, el causante Héctor Luis Serrano Serrano.[2] Arguyeron que fueron desheredados injustamente y solicitaron que se reestablezca su llamamiento a la legítima. Alegaron que la desheredación carecía de causa.

El 27 de septiembre de 2024, la señora Martínez Otero contestó la demanda.[3] Adujo que la desheredación fue por una causa justificada porque el testador especificó la causal para desheredarlos en el primer inciso de la tercera cláusula del testamento, conforme con las disposiciones aplicables del Código Civil, *infra*. Por su parte, el 18 de noviembre de 2024, la señora Serrano Hernández contestó la demanda.[4]

Luego de varios trámites procesales que resultan innecesarios pormenorizar, el 1 de julio de 2025, el foro primario dio por admitidos los requerimientos de admisiones cursados a las apelantes.[5] De ellos, surge que los apelados tenían lazos afectivos con el testador al momento de la apertura de la sucesión y que compartían en celebraciones y reuniones familiares.

Consecuentemente, el 26 de noviembre de 2025, la señora Serrano Negrón *et al.* presentaron una *Moción de Sentencia Sumaria.*[6] Argumentaron que no existían controversias en los

---

[2] *Demanda*, SUMAC en el recurso CG2024CV03134, entrada 1.
[3] *Contestación a [la] Demanda*, *Íd.*, entrada 9.
[4] *Contestación a [la] Demanda*, *Íd.*, entrada 15, anejo 1.
[5] *Orden*, *Íd.*, entrada 36.
[6] *Moción de Sentencia Sumaria*, *Íd.*, entrada 45.

hechos materiales propuestos. Articularon que el testador Serrano Serrano no pormenorizó las actuaciones o eventos que lo llevaron a desheredarlos. Razonaron que, como el testamento no recoge sucesos específicos o conductas determinadas que sustentaran la desheredación, la cláusula no satisfizo el requisito de que la disposición testamentaria establecieran la causa para tal determinación. Por ende, le solicitaron al foro apelado que precisara que su desheredación fue injusta.

En respuesta a ello, la señora Martínez Otero y la señora Serrano Hernández presentaron su oposición al petitorio sumario el 16 de diciembre de 2025.[7] En síntesis, sostuvieron que la causa de desheredación estaba debidamente incluida en el testamento y que el testador no tenía que especificar eventos o actos que lo llevaron a tomar su decisión.

Así, el 16 de enero de 2026, el foro primario notificó una *Sentencia* mediante la cual declaró ha lugar a la solicitud de sentencia sumaria presentada por la señora Serrano Negrón *et al.* y, consecuentemente, ha lugar a la demanda de impugnación de testamento por desheredación injusta.[8] Tras evaluar las peticiones y los documentos acompañados, el foro apelado procedió a formular las siguientes determinaciones de hechos:

1. Serrano Serrano falleció el 17 de abril de 2024 en San Juan, Puerto Rico.

2. El testador procreó 6 hijos. Estos son: Normand Serrano Cordero, Jennifer Serrano Hernández, Héctor Luis Serrano Hernández, Yazmin Serrano Negrón, Xiomara Serrano Negrón y Sheila Serrano Negrón.

3. El último matrimonio de Serrano Serrano fue con la codemandada, Marisol Martínez Otero (Martínez Otero o viuda), con quien no procreó hijos.

4. El 12 de octubre de 2022 el testador otorgó la Escritura Número 9 sobre Testamento Abierto ante la Notario Frances M. Meléndez Alicea.

---

[7] *Oposición [a la] Solicitud de Sentencia Sumaria, Íd.*, entrada 47.
[8] *Sentencia, Íd.,* entrada 49.

5. En la cláusula Tercera, inciso Uno de dicho testamento, Serrano Serrano desheredó a sus hijos Normand Serrano Cordero, Héctor Luis Serrano Hernández, Yazmin Serrano Negrón, Xiomara Serrano Negrón y Sheila Serrano Negrón.

6. El testador fundamentó la desheredación en alegadas causas de indignidad del Artículo 1556 del Código Civil de 2020, 31 LPRA § 10971, y en las causas de desheredación del Artículo 1635 del Código Civil de 2020, 31 LPRA § 111952. No obstante, Serrano Serrano no específico las razones para dicha desheredación.

7. La cláusula Tercera, inciso Uno del testamento lee como sigue:

Por la presente el testador deshereda a cinco de sus hijos de nombres Normand Serrano Cordero, mayor de edad, casado con Ángel Rosa, comerciante y vecino de San Juan, Puerto Rico; Héctor Luis Serrano Hernández, mayor de edad, soltero, comerciante y vecino de Florida, Estados Unidos; Sheila Serrano Negrón, mayor de edad, soltera, ama de casa y vecina de Florida, Estados Unidos; Yazmin Serrano Negrón, mayor de edad, empleada y vecina de Bayamón, Puerto Rico y Xiomara Serrano Negrón, mayor de edad, soltera, empleada y vecina de Trujillo Alto, Puerto Rico. Deshereda a estos cinco (5) hijos por la misma causa de indignidad según reza el artículo Mil Quinientos Cincuenta y Seis (a) (1556-a) del Código Civil del año Dos Mil Veinte (2020) entiéndase por abandono, maltrato físico y psicológico hacia el testador. Además de la causa de indignidad, deshereda a estos cinco (5) hijos por las tres (3) causas que menciona el artículo Mil Seiscientos Treinta y Cinco (b) y (c), (1635 b y c) del Código Civil de Dos Mil Veinte (2020).

8. En la cláusula Tercera, inciso Dos del testamento, el testador instituyó como herederas en la porción de legítima estricta a Jennifer Serrano Hernández y a su cónyuge Martínez Otero.

9. En la cláusula Tercera, inciso Tres de testamento el testador instituyó como heredera en la porción de libre disposición a Martínez Otero.

10. En la cláusula Cuarta del testamento, el testador del testamento designó a Martínez Otero como su ejecutora universal, con relevo de fianza y sin límite de tiempo.

11. En la cláusula Novena del testamento, el testador revocó y anuló el Testamento Abierto otorgado el 17 de diciembre de 2020 mediante la Escritura Número 18.

12. El 28 de agosto de 2024 se incoó la demanda de epígrafe solicitando la impugnación del testamento únicamente en cuanto a la desheredación de Normand Serrano Cordero, Yazmin Serrano Negrón y Xiomara Serrano Negrón, quienes figuran entre los hijos desheredados.

13. El 1 de julio de 2025 el Tribunal el Tribunal dio por admitidos los requerimientos de admisiones cursados a ambas codemandadas.

14. De los requerimientos de admisiones surge que la parte demandante tenía lazos afectivos con Serrano Serrano y que compartían en festejos y reuniones familiares.

En sus conclusiones de derecho, el foro apelado coligió que el testador Serrano Serrano privó a sus hijos de su derecho legítimo de heredar sin consignar concreta y específicamente la causa o motivo para tal desheredación. Aludió a que, en el testamento, el señor Serrano Serrano solamente hizo una mención genérica de los Artículos del Código Civil de 2020 sobre indignidad y desheredación, sin haber especificado las actuaciones o eventos que motivaron la desheredación. Puntualizó el tribunal que la mención de un artículo del Código Civil no cumple con el estándar legal requerido para privar a los hijos de lo que por ley les corresponde.

A su vez, el TPI concluyó que las señoras Serrano Hernández y Martínez Otero no rebatieron la evidencia presentada por la señora Serrano Negrón *et al.*, ya que no señalaron eventos específicos constitutivos de desheredación. Solamente se limitaron a alegar que las causas de desheredación surgían del testamento, sin ofrecer prueba que acreditara las causas de la desheredación. Ante ello, el tribunal primario dedujo que la desheredación se considera injusta y, por consiguiente, produjo los efectos de la preterición de la señora Serrano Negrón *et al.*

En su consecuencia, el TPI declaró con lugar la demanda de impugnación de testamento por desheredación injusta, instituyó como legitimarios del causante Serrano Serrano a sus hijos, Xiomara Serrano Negrón, Yazmin Serrano Negrón y Normand Serrano Cordero, y ordenó que se les otorgara su parte de la legítima estricta, a ser dividida en partes iguales entre éstos y la parte

apelante. Es decir, cada uno de los herederos forzosos tendría derecho al veinte por ciento (20%) de la legítima.

Inconformes con dicho fallo, el 28 de enero de 2026, las señoras Serrano Hernández y Martínez Otero presentaron una reconsideración.[9] La señora Serrano Negrón *et al.* se opusieron a la solicitud el 3 de febrero de 2026.[10] La petitoria aludida fue denegada por el foro apelado mediante una *Resolución* pronunciada y notificada el 3 de febrero de 2026.[11]

Insatisfechas aún, las señoras Serrano Hernández y Martínez Otero presentaron su recurso de apelación ante esta Curia el 17 de febrero de 2026 y señalaron que el TPI cometió los siguientes errores:[12]

> 1. Err[ó] el TPI al resolver que el testador privó a sus hijos de su derecho legítimo de heredar sin consignar concreta y específicamente la causa o motivo para tal desheredación.

> 2. Err[ó] el TPI al dictar sentencia sumaria declarando [ha] lugar la demanda de impugnación de testamento en la circunstancia del caso.

La parte apelada, señora Serrano Negrón *et al.,* presentó su alegato en oposición el 17 de marzo de 2026. Arguye que la sentencia apelada está sustentada en los hechos no controvertidos y en el derecho aplicable, razón por la cual este Tribunal debe ratificar la restitución de Xiomara Serrano Negrón, Yazmin Serrano Negrón y Normand Serrano Cordero en su posición de herederos forzosos con derecho a la porción de la legítima que les corresponde por ley.

---

[9] *Moción de Reconsideración de [la] Sentencia, Íd.*, entrada 50.
[10] *Oposición a [la] Moción de Reconsideración de [la] Sentencia, Íd.*, entrada 52.
[11] *Resolución, Íd.*, entrada 53.
[12] *Apelación,* SUMAC-TA en el recurso TA2026AP00167, entrada 1.

## II.

### A.

El mecanismo de sentencia sumaria, regulado por la Regla 36 de las de Procedimiento Civil,[13] le permite al tribunal disponer de un caso sin celebrar una vista en su fondo.[14]

La Regla 36.1 de las de Procedimiento Civil,[15] establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[16] Por tanto, el tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto con las declaraciones juradas, si las hubiere, surge que no existe ninguna controversia real sobre los hechos materiales y esenciales del caso, y solo resta por resolver una controversia de estricto derecho.[17]

Por otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existen hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[18]

La parte promovida tiene el deber de refutar los hechos alegados con prueba que controvierta la exposición de la parte que

---

[13] 32 LPRA Ap. V, R. 36.
[14] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[15] 32 LPRA Ap. V, R. 36.1.
[16] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).
[17] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).
[18] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.*, supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

solicita la sentencia sumaria.[19] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de esto proceder en derecho.[20]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[21]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la manera más favorable a la parte que se opone a esta.[22] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria[,] se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente".[23]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador para determinar si procede dictar sentencia sumaria, empero: (1) solo puede considerar los documentos que se presentaron ante el foro de primera instancia, y (2) solo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[24]

---

[19] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215.

[20] *León Torres v. Rivera Lebrón,* supra, pág. 43.

[21] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

[22] *Mejías et al. v. Carrasquillo et al.,* supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.

[23] *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998).

[24] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González et al. v. M. Cuebas*,[25] indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil.[26] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[27] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[28]

El modelo de sentencia sumaria por insuficiencia de prueba fue adoptado por el Tribunal Supremo en *Medina v. M.S. & D. Química P.R., Inc.*[29] Esta modalidad procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso.[30] Específicamente, el promovente debe establecer que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación, y (3) como cuestión de derecho, procede la desestimación de la reclamación.[31]

No obstante, para disponer de un pleito por dicho fundamento es indispensable que se le haya brindado a la parte promovida

---

[25] 193 DPR 100 (2015).
[26] *Íd.*, pág. 118.
[27] *Íd.*, pág. 119.
[28] *Íd.*
[29] 135 DPR 716 (1994).
[30] *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 786 (2016).
[31] *Íd.*

amplia oportunidad para realizar un descubrimiento de prueba y que se demuestre que la prueba descubierta no satisface los elementos necesarios para sostener su causa de acción.[32] Por su lado, la parte promovida no puede evitar tal solicitud "por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su 'día en corte'."[33] Así que, para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas presentar con su oposición una prueba admisible en evidencia o una prueba que pueda convertirse en admisible —aunque de momento no lo sea— o que dé lugar a una prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; que hay prueba en el récord que puede convertirse en una prueba admisible que derrotaría la contención de insuficiencia del promovente; que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o que este, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la sentencia sumaria.[34]

Valga apuntar que, a la modalidad de sentencia sumaria por insuficiencia de la prueba, le aplican todos los principios que deben utilizarse por los tribunales al resolver una solicitud de sentencia sumaria.[35] Por ello, podrá dictarse sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso,[36] y, además, si en derecho procede el reclamo.[37] "[C]uando existe duda sobre si hay o no prueba

---

[32] *Íd.,* pág. 787.
[33] *Íd.*
[34] *Medina v. M.S. & D. Química P.R., Inc.,* supra, pág. 734.
[35] *Íd.*
[36] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo [con el] derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, págs. 213-214.
[37] *SLG Zapata-Rivera v. J.F. Montalvo,* supra.

suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida"[38].

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[39]

Hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos,[40] es el precedente de cosa juzgada cuando se opone entre partes debidamente relacionadas.[41] Por ello, se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de ponderar cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley".[42]

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versan esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como lo es la intención, los propósitos mentales o la negligencia.[43] Sin embargo, también se ha dicho que ello no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que serán considerados en la solicitud

---

[38] *Medina v. M.S. & D. Química P.R., Inc.,* supra.

[39] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

[40] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 58 DPR 743, 769 (2003).

[41] *Vera v. Dr. Bravo*, supra, pág. 335.

[42] *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

[43] *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales.[44]

**B.**

Un testamento es "el negocio jurídico solemne, personalísimo, unilateral y esencialmente revocable mediante el cual una persona natural dispone, total o parcialmente, el destino de sus bienes para después de su muerte[,] y ordena su propia sucesión dentro de los límites y las formalidades que señala la ley".[45] Además, el testador podrá impartir directrices sobre asuntos no patrimoniales, como lo sería el nombramiento de tutores, albaceas y contadores-partidores; el reconocimiento de hijos naturales, o instrucciones relacionadas con los actos fúnebres y destino del cuerpo.[46]

Existen dos tipos de testamentos: los comunes y los especiales. A su vez, hay dos clases de testamentos comunes: el abierto y el ológrafo.[47] Entonces, cualquier persona natural de catorce (14) años o más de edad que tenga suficiente discernimiento para entender la finalidad, el contenido y la trascendencia del negocio jurídico puede otorgar un testamento abierto; para otorgar un testamento ológrafo, la persona debe tener dieciocho (18) años o más.[48]

Puntualmente, el testamento abierto se otorga ante un notario mediante una escritura pública. Empero, ya no es necesaria la intervención de testigos instrumentales, al menos que así lo requiera el testador o el notario.[49] Si el testador no sabe o puede leer o firmar, el otorgamiento se regirá por las disposiciones aplicables contenidas

---

[44] *Íd.*

[45] Artículo 1639 del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 11251; *In re De la Texera Barnés*, 177 DPR 468, 476-477 (2009); *Suc. Caragol v. Registradora*, 174 DPR 74, 83-84 (2008).

[46] 31 LPRA sec. 11251; *TOLIC v. Febles Gordián*, 170 DPR 804, 815 (2007).

[47] 31 LPRA sec. 11261.

[48] *Íd.*, sec. 11253. El discernimiento de la persona que otorga un testamento abierto será evaluado por el notario autorizante a través de las averiguaciones mínimas necesarias para quedar plenamente convencido de la capacidad del testador. Véase, *In re Martínez Almodóvar*, 180 DPR 805, 829 (2011).

[49] 31 LPRA sec. 11271.

en la legislación notarial.[50] Es conveniente precisar que, el testamento abierto debe incluir la hora del otorgamiento,[51] y que el notario y los testigos instrumentales, de haberlos, deben dar fe de la capacidad del testador para llevar a cabo el acto.[52] Por último, de comparecer testigos instrumentales, estos han de ser idóneos, lo cual es determinado de acuerdo con los preceptos notariales.[53]

Un testamento que no corresponda a las clases mencionadas o el cual no cumpla con los requisitos de forma es nulo.[54] Sin embargo, el no indicar que se ha cumplido con los requisitos en forma alguna afecta la validez del negocio jurídico si efectivamente se consumaron.[55] Asimismo, la falta de expresión de la hora de otorgamiento tampoco soslaya la validez del documento si el testador no ha otorgado otro en la misma fecha.[56] Ahora bien, "[e]s anulable el testamento o la disposición testamentaria en cuyo otorgamiento media algún vicio de la voluntad o en el que el testador, en el momento del otorgamiento, carece de capacidad".[57]

Por otro lado, el testador puede optar por revocar expresa, tácita o realmente su testamento, lo cual produce su efecto.[58] El Código Civil indica que la revocación expresa acontece "cuando, en un testamento posterior, de cualquier clase, el testador, explícitamente, deja sin efecto en todo o en parte, las disposiciones contenidas en otro anterior".[59] Por su parte, establece que la revocación tácita se da cuando las disposiciones testamentarias, en parte o en todo, son incompatibles con un testamento posterior.[60] También, puede ocurrir una revocación por divorcio o nulidad

---

[50] *Íd.*
[51] *Íd.*, sec. 11274.
[52] *Íd.*, sec. 11275.
[53] *Íd.*, sec. 11273.
[54] *Íd.*, sec. 11371.
[55] *Íd.*
[56] *Íd.*
[57] *Íd.*, sec. 11372.
[58] *Íd.*, secs. 11374, 11381.
[59] *Íd.*, sec. 11375.
[60] *Íd.*, sec. 11376.

matrimonial, si el testamento contenía disposiciones a favor del excónyuge.[61] Por último, la revocación real se da cuando el testador destruye o inutiliza el testamento ológrafo.[62] Igualmente, el testamento revocatorio puede ser revocado, pero las disposiciones del anterior solo conservan su eficacia si el testador así lo dispone expresamente.[63] Resulta categórico apuntalar que el reconocimiento testamentario de un hijo no es revocable; por ende, subsiste su validez a pesar de la revocación del negocio jurídico *mortis causa.*[64]

## c.

Se le conoce como legitimario a aquella persona natural que tiene derecho a recibir una porción de los bienes de un fallecido; esta se conoce como la legítima. La legítima es "la parte de la herencia que la ley reserva para determinadas personas, denominadas legitimarios".[65] Es decir, la legítima es aquella porción del caudal de la cual el testador no puede disponer libremente porque les corresponde a los herederos forzosos;[66] destacamos que la legítima ni puede ser gravada ni condicionada.[67]

En el caso de la sucesión testada, como el testador puede disponer libremente del cincuenta por ciento (50%) de sus bienes si tiene legitimarios, la otra mitad constituye la legítima; de no tener herederos forzosos, tiene la libertad de distribuir la totalidad de sus bienes.[68] En la mencionada, los legitimarios son: en primer rango, los descendientes y el cónyuge supérstite; a falta de estos, los ascendientes como segundo rango.[69]

El testador que omite instituir a alguno o a varios de sus legitimarios en su testamento incurrirá en preterición; la calificación

---

[61] *Íd.*, sec. 11377.
[62] *Íd.*, sec. 11378.
[63] *Íd.*, sec. 11378.
[64] *Íd.*, sec. 11380.
[65] 31 LPRA sec. 11162.
[66] *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 489 (2016).
[67] 31 LPRA sec. 11166.
[68] *Íd.*, sec. 11163.
[69] *Íd.*, sec. 11162.

de la preterición ha de atenderse en la apertura de la sucesión.[70] La preterición "no anula la institución de heredero. Además, conlleva la división de la legítima entre el total de los legitimarios".[71] Entonces, si el testador le deja a un legitimario menos de lo que corresponde, está autorizado a exigir su complemento.[72]

Nuestro ordenamiento jurídico viabiliza ciertas maneras mediante las cuales los legitimarios de un causante se encuentran privados de la porción de la herencia que les correspondiese por ley: la indignidad y la desheredación.

Particularmente, la desheredación "es la disposición testamentaria que priva a un legitimario de su derecho a la herencia".[73] Para poder desheredar a un heredero forzoso, la desheredación y su causa deben estar plasmadas expresa y claramente en el testamento.[74]

Si el legitimario impugna la desheredación por carencia de causa, **el heredero tiene la carga de la prueba para sustentar su existencia**; por otro lado, si el desheredado alega que hubo una reconciliación o un perdón por parte del testador, deberá así evidenciarlo.[75] Esta causa de acción tiene un término de caducidad de dos (2) años desde que se conoce la desheredación.[76]

La desheredación injusta produce los efectos de la preterición porque esta se realiza: (a) sin expresión de causa; (b) por una causa impugnada cuya certeza no puede probarse, o (c) por una causa no ajena a las del Código Civil.[77]

---

[70] *Íd.*, sec. 11181; *Cabrer v. Registrador*, 113 DPR 424, 437 (1982). La apertura de la sucesión ocurre simultáneamente con la muerte del causante y es una de las cuatro fases fundamentales descritas en el derecho sucesorio.
[71] 31 LPRA sec. 11182.
[72] *Íd.*, sec. 11183; *Moreda v. Rosselli*, 141 DPR 674, 683 (1996).
[73] 31 LPRA sec. 11191; *Blanco v. Sucn. Blanco*, 106 DPR 471, 476 (1977).
[74] 31 LPRA sec. 11192.
[75] *Íd.*, sec. 11193.
[76] *Íd.*
[77] *Íd.*, sec. 11194.

Además de la indignidad,[78] son justa causa para desheredar a un *descendiente*: "(a) haber negado alimentos al testador sin motivo legítimo; (b) haber maltratado, injuriado gravemente o atentado contra la vida del testador; o (c) haber sido negligente en tomar a su cuidado al testador cuando se encontraba enfermo o sin poder valerse por sí mismo".[79]

No obstante, la reconciliación entre el testador y el desheredado anula la desheredación. El Código Civil, *supra*, reconoce manifiestamente que "[l]a reconciliación posterior [al otorgamiento del testamento] entre el ofensor y el ofendido priva a este del derecho a desheredar, deja sin efecto la desheredación ya hecha y produce, a su vez, los efectos de la preterición".[80]

### III.

En caso de marras, debemos resolver si fue correcto dictar sentencia sumaria declarando *ha lugar* a la demanda de impugnación testamentaria por desheredación injusta entablada por la señora Serrano Negrón *et al.* contra la señora Serrano Hernández y la señora Martínez Otero.

---

[78] En general, es indigna para suceder a un causante:

(a) la persona que abandona o maltrata física o sicológicamente al causante;

(b) la persona convicta por haber atentado contra la vida del causante, de su cónyuge, de sus descendientes o de sus ascendientes, del ejecutor o de otro llamado a la herencia cuya muerte favorezca en la sucesión al indigno;

(c) la persona convicta por acusar o denunciar falsamente al causante de la comisión de un delito que conlleva una pena grave;
(d) la persona que deja de cumplir durante tres (3) meses consecutivos o seis (6) alternos con la obligación, impuesta administrativa o judicialmente, de alimentar al causante;

(e) la persona que, mediante dolo, intimidación, fraude o violencia induce o impide al causante otorgar, revocar o modificar su testamento; o el que, conociendo estos hechos, los utiliza para su beneficio; y

(f) la persona que destruye, oculta o altera el testamento del causante.

*Íd.*, sec. 10973.
[79] *Íd.*, sec. 11195.
[80] *Íd.*, sec. 11198.

Las señoras Serrano Hernández y Martínez Otero plantearon que el foro primario estaba impedido de dictar sentencia sumaria a favor de la señora Serrano Negrón *et al.* porque habían hechos en controversia que habrían de dirimirse en un juicio y porque la causa de la desheredación está plasmada apropiadamente y conforme a derecho en el testamento del señor Serrano Serrano.

Como hemos expuesto, el primer y segundo paso del estándar que este Tribunal debe utilizar para revisar la concesión o denegatoria de una solicitud de sentencia sumaria es una revisión *de novo* del expediente del caso de epígrafe y corroborar que tanto la solicitud como la oposición a sentencia sumaria cumplan con los requisitos de la Regla 36 de las de Procedimiento Civil.[81] De una lectura cuidadosa de la solicitud de sentencia sumaria presentada por la señora Serrano Negrón *et al.*, y de la oposición facilitada por la señora Serrano Hernández y la señora Martínez Otero, **colegimos que el primer escrito *cumple* con los requisitos dispuestos por la Regla 36.3 (a) de las de Procedimiento Civil, *supra*, mas *no el segundo*.**[82]

Específicamente, la petición de sentencia sumaria contiene una exposición breve de las alegaciones de las partes; los asuntos litigiosos o en controversia; la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; una relación concisa, organizada y en párrafos enumerando todos los hechos pertinentes y esenciales sobre los cuales no existe controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible, así como cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal, las razones por la cuales debe ser dictada

---

[81] Regla 36 de las de Procedimiento Civil, *supra*.
[82] *Íd.*

la sentencia sumaria con derecho aplicable y el remedio que debe ser concedido.

Por otra parte, la oposición a la sentencia sumaria de la señora Serrano Hernández y la señora Martínez Otero **incumplió con el requisito de aludir a los párrafos o a las páginas de declaraciones juradas u otra prueba admisible**, así como cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. La mayoría de sus refutaciones, incluyendo unas neurálgicas para sostener su postura, adolecen de este incumplimiento craso con nuestras reglas procesales.

Consecuentemente, el foro primario no estaba obligado a "considerar aquellos hechos que no ha[bían] sido específicamente enumerados y que no t[enían] una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen".[83]

Asimismo, en el presente caso, después de un examen cuidadoso de la solicitud de sentencia sumaria y su oposición, concluimos que no existen hechos materiales en controversia o que pudiesen afectar el resultado de las reclamaciones de acuerdo con el derecho sustantivo aplicable.

**Según mencionamos en la sección anterior, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real, por lo cual cualquier duda es insuficiente para derrotar la solicitud de remedio sumario.** Al momento de controvertir los hechos propuestos por la otra parte, el oponente posee el peso para presentar evidencia sustancial que apoye los hechos materiales que arguye están en controversia. **En otras palabras, *no* puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer**

---

[83] *Meléndez González v. M. Cuebas, supra.*

**contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa.**

Respecto a la parte apelante, no surge de la contestación a la demanda o de la oposición a la sentencia sumaria ni un solo hecho específico o documento sobre acto alguno que indique que la desheredación es conforme a derecho porque la causa establecida es suficiente. Al contrario, se desprende del expediente que la señora Martínez Otero hizo referencia al hecho de que existían lazos afectivos entre los apelados y el testador.

Además, la parte apelante, no logró rebatir la presunción de desheredación injusta que se activó cuando se impugnó la desheredación por *falta de causa*, lo cual invierte la carga de la prueba; como no se pudo corroborar la razón de la decisión radical del señor Serrano Serrano, hubo preterición de la señora Serrano Negrón *et al.* y corresponde que se les honre su porción de la legítima.

En sentido contrario, la señora Serrano Negrón *et al.* lograron establecer mediante senda prueba documental y declaraciones juradas el hecho de que la desheredación fue injusta y que no se puede precisar la causa para esta tras su impugnación. Por tanto, compete que los apelados sean instituidos como legitimarios del señor Serrano Serrano junto con las apelantes.

Colegimos, pues, que el foro primario no erró al justipreciar que la petición de sentencia sumaria de la señora Serrano Negrón *et al.* era conforme a derecho y al declarar *ha lugar* a la demanda de impugnación testamentaria por desheredación injusta, instituyendo como legitimarios del causante Serrano Serrano a sus hijos, Xiomara Serrano Negrón, Yazmin Serrano Negrón y Normand Serrano Cordero, y ordenando que se les otorgara su parte de la legítima estricta, a ser dividida en partes iguales entre éstos y la

parte apelante. Así pues, se *confirma* la fundamentada *Sentencia* apelada.

**IV.**

En virtud de lo anterior, se *confirma* la *Sentencia* apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Cintrón Cintrón disiente con el resultado y hace constar las siguientes expresiones: "Disiento al entender que la presente controversia no es susceptible de resolverse por Sentencia Sumaria y debió disponerse en un juicio plenario".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones